EDWARD D. BLINN, Admr. *et al.*

*v.*

JESSIE D. GILLETT, Admx. *et al.*

*Opinion filed April 20, 1904.*

|208   473|
|209   ²604|

|208   473|
|213   ²128|

|208   473|
|115a  ²125|

1. WILLS—*when will passes to remainder-men funds arising from stock in liquidated banks.* A devise to the widow, for life, of all "the use, interest, dividends and profits" on shares of bank stock with remainder to children who survive the widow, passes to the remainder-men, as part of the *corpus* of the estate, money received by the widow arising from shares of the stock in certain of the banks which went into voluntary liquidation in her lifetime.

2. SAME—*when words may be read into will.* If it is clear, on the face of a will, that the testator has not accurately or completely expressed his meaning by the words used, and it is also clear what are the words he has omitted, such words may be supplied in order to effectuate the intention as collected from the context.

3. SAME—*stock dividend passes to remainder-men.* A stock dividend arising from a conversion by the corporation into capital stock of earnings accumulated during the testator's lifetime passes to the remainder-men, and not to the life tenant, under a will devising the use, interest, dividends and profits of such stock to the widow for life with remainder to children surviving her.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon. JOHN H. MOFFETT, Judge, presiding.

This was a bill in chancery filed in the circuit court of Logan county by Jessie D. Gillett, administratrix *de bonis non* with the will annexed of the estate of John D. Gillett, deceased, for the purpose of obtaining a construction of the will of John D. Gillett so far as it affects the disposition of certain bank stock, and the proceeds thereof, owned by John D. Gillett at the time of his death.

John D. Gillett departed this life testate on the 24th day of August, 1888, leaving him surviving his widow, Lemira P. Gillett, and his children, Emma S. Oglesby, Grace A. Littler, Nina L. Gillett, Amaryllis T. Gillett, Mary C. Hill, John P. Gillett, Jessie D. Gillett and Char-

lotte L. Barnes. At the time of the death of John D. Gillett he owned the following bank stock: First National Bank, Lincoln, Ill., one hundred shares, par value $10,000; First National Bank, Farmer City, Ill., thirty shares, par value $3000; Farmers' National Bank, Pekin, Ill., fifteen shares, par value $1500; Illinois National Bank, Springfield, Ill., one hundred shares, par value $10,000; Farmers' National Bank, Springfield, Ill., fifty shares, par value $5000; First National Bank, Mt. Pulaski, Ill., ten shares, par value $1000; National State Bank, Bloomington, Ill., thirty shares, par value $3000; total amount of stock, par value, $33,500. The paragraphs of the will of John D. Gillett which affect the disposition of said bank stock are Nos. 9, 23 and 24, and read as follows:

"*Ninth*—I give and devise to my wife, in case she shall survive me, for and during the period of her natural life," all the use, interest, dividends and profits that may accrue during such period on or from any share of bank stock which I may own at the time of my death. She shall be entitled to the possession of all certificates representing such stock, and to vote them in person or by proxy during her life. If, during the life of my said wife and after my death, any of the banks in which I shall own said stock shall wind up its business and distribute its capital among its stockholders, my said wife shall be entitled to receive and receipt for all sums payable on the certificates so to be held by her for life. She is hereby empowered to re-invest the principal of said stock as safely as possible, and to collect and retain to her own use all interests and profits derived from such investment during her natural life. The principal so invested shall, after the death of my said wife, be applied and distributed as hereinafter directed. If my said wife shall become satisfied, at any time after my death, that it would be wise and judicious to sell any part of said bank stock, she is hereby fully empowered, by and with the advice and consent of my said executors, to sell any

part or all of the stock so owned by me in the banks at Pekin, Mt. Pulaski, Farmer City and Bloomington. In the event of making such sale she shall invest the proceeds thereof as aforesaid, and shall be entitled to take to her own use, as her own property, all the interest and profits arising from such investment during her natural life. At her death the principal so invested shall be applied as hereinafter directed."

."*Twenty-third*—I hereby direct that the proceeds of the sale of all my personal property, other than bank stock, and not otherwise herein disposed of, together with the proceeds of all debts and demands due or to become due me, and of all real estate in this last will declared and directed to be disposed of as personalty, shall be applied and disposed of by my executors as follows: They shall first pay to my daughter Emma Susan Oglesby the sum of $10,000, and they shall divide the remainder of the proceeds of said personal property in equal parts amongst all of my said children,"—naming them, and providing that if any of his children shall depart this life before him leaving children, the children should take the parent's share; or if they died before him leaving no children, then the proceeds of said debts, demands and personal estate to be divided in equal parts among the survivors or their descendants.

"*Twenty-fourth*—In case my said wife shall not survive me, I give and bequeath all my bank stock as follows: To Emma Susan Oglesby $5000; to Grace Adeline Littler $5000; to Nina Lemira Gillett $5000; to Mary Catherine Hill $4000; to Jessie D. Gillett $4000; to Amaryllis Tuttle Gillett $4000; to Charlotte Lancraft Gillett $3000; and the remainder, if any, to my son, John Park Gillett. I direct that said stock shall be distributed by my executors, not on the face or par value of said stock, but on its market or selling value, so that the share given to each of my said children shall amount in real value to the sum above specified as intended for her. If there

shall not be sufficient stock to make up the sums indicated, then I direct that all of said bequests shall abate *pro rata.* If any of my said children shall depart this life before me leaving any child or children who shall survive me, then such child or children shall take in equal parts amongst them the share or shares which his, her or their deceased parent or parents would have taken if alive. If any of my said children shall depart this life before me leaving no child or children who shall survive me, then the share or shares of such deceased child or children shall be divided in equal parts amongst my surviving children named as aforesaid, the surviving children of any of my children so named as aforesaid to take in equal parts amongst them the share or shares which his, her or their deceased parent or parents would have taken if alive. If my said wife shall survive me, I give and bequeath all my bank stock that shall remain unsold at the time of her death, and all money arising from the sale of said bank stock by my wife, in manner following, to-wit: To each of my following named children who shall survive my said wife the following parcels or portions, to-wit: To Emma Susan Oglesby $5000; to Grace Adeline Littler $5000; to Nina Lemira Gillett $4000; to Mary Catherine Hill $4000; to Jessie D. Gillett $4000; to Amaryllis Tuttle Gillett $3000; to Charlotte Lancraft Gillett $3000; and the remainder, if any, to my son, John Park Gillett. I direct that my executor shall make distribution, not on the par value or face of said stock, but on the basis of the market or selling value thereof, so that the share given to each of said children shall amount in real value to the sum above specified as intended for her. If my bank stock, together with the money arising from the sale of any part thereof, shall not be sufficient to discharge said specific bequests, then each bequest shall abate *pro rata.* If any of my said children shall depart this life before my said wife leaving any child or children who shall survive my said wife, then such child

or children shall take in equal parts amongst them the share or shares of said bank stock and money which his, her or their deceased parent or parents would have taken in the event of surviving my said wife. If any of my said children shall depart this life before my said wife leaving no child or children who shall survive my said wife, then the share or shares of said bank stock and money which would otherwise go to such deceased child or children shall be divided in equal parts among the survivors of my children named as aforesaid, the surviving children of any of my children so named to take in equal parts amongst them the share or shares which his, her or their deceased parent would have taken if alive at the death of my said wife. I distinctly direct and declare that in bequeathing said bank stock, and any money that shall arise from the sale of any part thereof by my said wife, it is my desire and intention that none of my children named as aforesaid, or their children or descendants, shall take any vested interest in said stock or money until the death of my said wife, in case she shall survive me, and that until the death of my said wife, and the consequent vesting of said titles and interests, my said children and their descendants shall not be entitled to sell, transfer or encumber any of said stock or money or any interest therein, and that the same shall be wholly free from all judgments, attachments, executions and legal processes against any of my said children or their descendants until or unless said title or interest shall become vested in them by the death of my said wife."

In 1895 the Farmers' National Bank of Pekin went into voluntary liquidation, and there was paid to the executors of John D. Gillett, deceased, the sum of $2175, which amount represented the net value of the Gillett stock in that bank. During the same year the First National Bank of Farmer City went into voluntary liquidation, and there was paid to the executors of John D. Gillett, deceased, the sum of $3420, which amount repre-

sented the net value of the Gillett stock in that bank; and in the year 1900 the National State Bank of Bloomington went into voluntary liquidation, and there was paid to the executors of John D. Gillett, deceased, the sum of $3750, which amount represented the net value of the Gillett stock in that bank, and these sums, which aggregate the sum of $9345, were paid by the executors to the widow, Lemira P. Gillett.

At the time of the death of John D. Gillett the capital stock of the First National Bank of Lincoln was $50,-000, surplus $50,000, and its undivided profits $13,169.41. Shortly after the death of John D. Gillett the directors and stockholders of that bank, with the consent of the comptroller of the currency, increased the capital stock of said bank from $50,000 to $100,000, and one hundred shares, of the par value of $100 per share, of the new stock was issued to the widow, Lemira P. Gillett, the certificate which she received therefor being certificate No. 122, for the sum of $10,000. From that time to the time of her death Lemira P. Gillett held the original and the new stock in said First National Bank of Lincoln and received the cash dividends thereon as they accrued and were paid, and at the time of her death the new stock was worth $20,000.

Grace A. Littler died without leaving her surviving a child or children or the descendants thereof, in May, 1891, and leaving a last will, in which she bequeathed all personal property that she might own at the time of her death to her husband, David T. Littler. John P. Gillett died testate on September 8, 1901, without leaving him surviving a child or children or the descendant thereof, and leaving Inez M. Gillett as his widow. On the 21st day of September, 1901, Lemira P. Gillett, widow of John D. Gillett, deceased, died testate, and by her last will bequeathed all the bank stock owned by her in the First National Bank of Lincoln to Charlotte L. Barnes in trust for Joan Gillett Barnes and William Barnes, Jr., the chil-

dren of Charlotte L. Barnes, who are made parties defendant to the bill.

Answers and replications were filed, and David T. Littler and Inez M. Gillett averred that the will of John D. Gillett did not make any specific devise of the proceeds of the stock of banks that had voluntarily gone into liquidation, but that the same passed under the residuary clause in the will of John D. Gillett, deceased, to all of his children, share and share alike; and Charlotte L. Barnes, as trustee, averred that she claimed certificate No. 122 for $10,000 of stock in the National Bank of Lincoln under the will of Lemira P. Gillett, deceased, for the benefit of her said children.

The decree of the circuit court found certificate No. 122 passed, upon the death of Lemira P. Gillett, to the children of John D. Gillett who survived their mother, Lemira P. Gillett, and that the money in the hands of Lemira P. Gillett, received by her from the national banks which had voluntarily gone into liquidation, belonged to the children of John D. Gillett, deceased, who survived their mother, Lemira P. Gillett, and that Grace A. Littler and John P. Gillett having died prior to the death of their mother, David T. Littler and Inez M. Gillett took no interest in said bank stock or said fund. David T. Littler and Inez M. Gillett excepted to that part of the decree that found that the fund received by Lemira P. Gillett from banks that had gone into voluntary liquidation passed to the children of John D. Gillett, deceased, who survived their mother, Lemira P. Gillett, and also to that part of the decree that found that David T. Littler and Inez M. Gillett took no interest either in the fund derived from the banks that had gone into voluntary liquidation or in certificate No. 122, and Charlotte L. Barnes, as trustee, and her children, who appeared by guardian *ad litem*, excepted to that part of the decree that found that certificate No. 122 did not pass under the will of Lemira P. Gillett to Char-

lotte L. Barnes, in trust for her children. Since the commencement of this suit David T. Littler has departed this life testate, and Stephen L. Littler, his personal representative and sole heir, has been substituted in his stead. Inez M. Gillett and Stephen L. Littler, as the personal representatives of John P. Gillett, deceased, and David T. Littler, deceased, respectively, and Charlotte L. Barnes, as trustee, prosecuted an appeal to the Appellate Court for the Third District, where the decree of the circuit court was affirmed, and a further appeal has been prosecuted to this court. Edward D. Blinn has been substituted as administrator of the estate of John P. Gillett, deceased, in lieu of Inez M. Gillett.

T. M. Harris, and E. D. Blinn, for appellants E. D. Blinn and Stephen L. Littler:

In construing a will the intention as expressed therein is to govern, and not what was supposed was the testator's intention not expressed in a will. *Kelly* v. *Gonce,* 49 Ill. App. 87; *Bingel* v. *Volz,* 142 Ill. 214; *Williams* v. *Williams,* 189 id. 509; *Wentworth* v. *Read,* 166 id. 142; *Engelthaler* v. *Engelthaler,* 196 id. 230.

In construing a will the intention to be sought is not that which existed in the mind of the testator, but that which is expressed by the language of the will. The rule is inflexible that surrounding circumstances cannot be resorted to for the purpose of importing into a will any intention not therein expressed. *Williams* v. *Williams,* 189 Ill. 509; Page on Wills, sec. 460; *Sturges* v. *Work,* 122 Ind. 134; *Pack* v. *Shanklin,* 43 W. Va. 304.

Nor can an express disposition, though probably involving an oversight or mistake by the testator, be controlled by inference which is not necessary or indubitable, it being the safest course to abide by the words. 2 Roper on Legacies, 1460.

If a testator overlooks an event which he would probably have provided against had it occurred to him, it is

not the province of the court to supply the omission by inserting a clause disposing of the property according to some supposed or probable intention of the testator. 2 Roper on Legacies, 1464; *Kelly* v. *Gonce*, 49 Ill. App. 87; Page on Wills, sec. 460.

Where a will devised the income of bank stock to the testator's widow for life, and provided that if the banks should go into voluntary liquidation the life tenant should loan the money so received and have the income during life, the fund to be disposed of as "hereinafter provided," and the testator makes no special devise of the fund but the will has a general residuary clause, the fund passes under the general residuary clause. *Buchanan* v. *Floyd*, 64 Md. 306; *Barnet* v. *Barnet*, 40 N. J. Eq. 380; *Rockwell* v. *Swift*, 59 Conn. 289; Page on Wills, p. 594.

The court cannot supply a supposed omission by construction, for to do so is to make a will, and not construe it. Page on Wills, sec. 461.

Where a bank has accumulated a surplus, the title is in the corporation, and if, after the death of the testator, by action of the stockholders and directors, the surplus was used to increase the capital stock issued and paid for out of the surplus, the stock, by such action, became separated from the *corpus* or body of the original stock. 2 Clark & Marshall on Private Corp. 1607, 1608; *Gibbons* v. *Mahon*, 136 U. S. 549; *Waterman* v. *Alden*, 42 Ill. App. 319; *Beveridge* v. *Railroad Co.* 2 L. R. A. 654; *Spooner* v. *Phillips*, 16 id. 465.

A clause in a will providing that the original stock of a bank shall not vest in the beneficiary until the death of the widow does not suspend the vesting of the new stock issued and paid for out of such surplus earnings of a bank. *Scofield* v. *Olcott*, 120 Ill. 374; *Grimmer* v. *Friederich*, 164 id. 248.

A shareholder in a corporation has no legal title to the property or profits of the corporation until a dividend is declared. *Beveridge* v. *Railroad Co.* 2 L. R. A. 654.

Hugh Crea, and Hugh W. Housum, for appellant Charlotte L. Barnes:

In construing a will as to the rights of life tenants and remainder-men to stock dividends the intention of the testator is to be ascertained, and if no rules of law are violated, the courts will, if possible, carry such intention into effect. *McLouth* v. *Hunt,* 134 N. Y. 179; *Hite* v. *Hite,* 93 Ky. 267; *Gibbons* v. *Mahon,* 136 U. S. 549; 2 Cook on Corp. sec. 557; *Thomas* v. *Gregg,* 78 Md. 545; 1 Elliott on Railroads, sec. 307.

Dividends or profits do not accrue to a stockholder until they are set off to him by a vote of the directors. *Waterman* v. *Alden,* 42 Ill. App. 294; *In re Kernochan,* 104 N. Y. 618; *Hyatt* v. *Allen,* 56 id. 553; *Hite* v. *Hite,* 93 Ky. 267.

In the case at bar the life tenant was entitled to certificate No. 122 as her absolute property, the same representing the stock based on undivided earnings or surplus. *Lowry* v. *Trust Co.* 64 N. E. Rep. 796; *McLouth* v. *Hunt,* 154 N. Y. 179; *Hite* v. *Hite,* 93 Ky. 267; 2 Perry on Trusts, (4th ed.) sec. 545; *Davis* v. *Johnson,* 152 Mass. 59; *Pritchett* v. *Trust Co.* 96 Tenn. 472.

Hamilton & Catron, and R. C. Maxwell, for appellee Jessie D. Gillett:

It is established that where it is clear, on the face of the will, that the testator has not accurately or completely expressed his meaning by the words he has used, and it is also clear what are the words he has omitted, those words may be supplied in order to effectuate the intention of the testator as collected from the context. *Glover* v. *Condell,* 163 Ill. 583; 29 Am. & Eng. Ency. of Law, p. 372; *Haug* v. *Schumacher,* 60 N. E. Rep. 245; 1 Jarman on Wills, (5th Am. ed.) 486; *In re Morony,* L. R. 1 Ir. 483; *Pride* v. *Fooks,* 3 DeG. & J. 266; *In re Redfern,* 6 Ch. Div. 133; *In re Daniels Settlement Trusts,* 1 id. 375.

Estates, legal or equitable, to commence *in futuro,* should always be regarded as vesting immediately, un-

less the testator has by very clear words manifested an intention that they should be contingent on a future event. *Haward* v. *Peavey*, 128 Ill. 430; *Walton* v. *Follansbee*, 131 id. 147; *Kingman* v. *Harmon*, id. 171; *Scofield* v. *Olcott*, 120 id. 371; *Cheney* v. *Teese*, 108 id. 482; *Knight* v. *Pottgieser*, 176 id. 368; *McCartney* v. *Osborn*, 118 id. 421; *Illinois Loan Co.* v. *Bonner*, 75 id. 315.

The interest of a stockholder in the earnings or surplus funds of a corporation passes to his assignee or legatee by a sale or bequest of the stock held by him. *Alsop* v. *DeKoven*, 107 Ill. App. 190; *Waterman* v. *Alden*, 42 id. 294; 144 Ill. 90; 2 Thompson on Corp. pars. 2172, 2173, 2206; *Gibbons* v. *Mahon*, 136 U. S. 549; *Goodwin* v. *Hardy*, 57 Me. 143; *Phelps* v. *Bank*, 26 Conn. 269; *Jones* v. *Railroad Co.* 57 N. Y. 196; *Jermain* v. *Railroad Co.* 91 id. 483; *Ryan* v. *Railroad Co.* 21 Kan. 365.

All interest, legal or equitable, in real or personal property may be devised or bequeathed by the owner or holder thereof. 29 Am. & Eng. Ency. of Law, (1st ed.) 250; 3 Starr & Cur. Stat. chap. 148, sec. 1.

BEACH & HODNETT, for appellees Nina L. Gillett and Emma S. Oglesby:

Technical construction of words and phrases will not be carried to the extent of defeating any obvious general intention of the testator. *Blackmore* v. *Blackmore*, 187 Ill. 102; *Johnson* v. *Askey*, 190 id. 58; *Brownfield* v. *Wilson*, 78 id. 467.

It is presumed that the testator intended to dispose of his entire estate, and any reasonable construction is justified to avoid failure to dispose of the entire estate. *Higgins* v. *Dwen*, 100 Ill. 554; *Scofield* v. *Olcott*, 120 id. 362; *Taubenhan* v. *Dunz*, 125 id. 524; *Hayward* v. *Loper*, 147 id. 41; *English* v. *Cooper*, 183 id. 203.

Where the defect in the language is a verbal omission, the meaning of the clause may be implied in order to reach the testator's obvious general intent. *Young* v.

*Harkleroad,* 166 Ill. 318; *Abbott* v. *Middleton,* 7 H. L. C. S. 68; *Carter* v. *Bloodgood's Executors,* 3 Sandf. Ch. 293; *Boston & Co.* v. *Coffin,* 152 Mass. 95; 1 Redfield on Wills, 466; *Metcalf* v. *Framingham,* 128 Mass. 375; 29 Am. & Eng. Ency. of Law, 372; *Kellogg* v. *Mix,* 37 Conn. 243.

Until a dividend is declared by the board of directors the stockholders are not entitled to any part of the earnings, and until such dividend is declared by the proper authority the earnings remain the property of the company and part of its capital. *Alsop* v. *DeKoven,* 107 Ill. App. 190; *Waterman* v. *Alden,* 42 id. 294; *Hooper* v. *Rossiter,* 1 McClell. 527; *Bouch* v. *Sproule,* L. R. 12 App. Cas. 385; *Bates* v. *McKinley,* 31 Beav. 180; *Richardson* v. *Richardson,* 75 Me. 431; *Rand* v. *Hubbell,* 115 Mass. 461; *Minot* v. *Paine,* 99 id. 101; *Gibbons* v. *Mahon,* 135 U. S. 549.

Stock dividends are accretions to the capital and go to the remainder-man, and not to the life tenant. *Alsop* v. *DeKoven,* 107 Ill. App. 190; *Waterman* v. *Alden,* 42 id. 294; *Minot* v. *Paine,* 99 Mass. 101; *Gibbons* v. *Mahon,* 136 U. S. 559; *Queen* v. *Safe Deposit Co.* 53 L. R. A. 169; *In re Barton's Trust,* L. R. 5 Eq. 238; *Richardson* v. *Richardson,* 75 Me. 570; *Deland* v. *Williams,* 101 Mass. 571; *Leland* v. *Hayden,* 102 id. 542; *Rand* v. *Hubbell,* 115 id. 461.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

The first question presented for consideration is, to whom did the $9345 received from the banks that had gone into voluntary liquidation belong upon the death of Lemira P. Gillett? The rule is fundamental that in construing a will the intention of the testator, if legal, should control, and to ascertain such intention the entire will should be considered in the light of all the circumstances surrounding the testator at the time the will was made. In *Decker* v. *Decker,* 121 Ill. 341, on page 354 the court said: "In every case calling for construction the question of first importance is, what was the testa-

tor's intention." And in *Finlay* v. *King's Lessee*, 3 Pet. 346: "The intent of the testator is the cardinal rule in the construction of wills, and if that intent can be clearly perceived and is not contrary to some positive rule of law, it must prevail." And in *Johnson* v. *Askey* 190 Ill. 58, on page 61: "The rule is well settled that in construing a will the intention of the testator must control, and to ascertain such intention the entire will should be considered in the light of all the circumstances surrounding the testator at the time the will was made."

If those paragraphs of the will of John D. Gillett which deal with the bank stock of the testator be read as a whole, it will appear clear, we think, that the testator intended his widow should have the absolute control of his bank stock, or the funds arising therefrom, during her lifetime, and that no interest therein should vest in his children or their descendants so long as the widow should live, and that the testator, upon the death of Lemira P. Gillett, intended that the principal of his bank stock, in whatever form it might be at that time,— that is, whether in stock, cash received from the sale of stock or cash received from banks that had gone into voluntary liquidation,—should be divided among his then surviving children and the descendants of deceased children. By paragraph 9 it is provided, if his wife survive him, for and during her natural life she shall have "all the use, interest, dividends and profits that may accrue during such period on or from any share of bank stock which I may own at the time of my death," and in case any of the banks in which the testator owned stock should wind up their business and distribute their capital, it is provided the widow shall be entitled to receive the funds received from such banks upon liquidation, and she is given the right to re-invest the principal and to retain to her own use all interest and profit derived from such re-investment during her natural life. She is also given power, with the advice and consent of the

executors, to sell any part or all of the stock in certain of said banks, and in case of such sale she is given authority to re-invest the proceeds arising therefrom, and is to have as her own property all the interest and profit arising from such investment, and at her death the principal arising from a voluntary liquidation shall "be applied and distributed as hereinafter directed," and in case of sale the principal shall "be applied as hereinafter directed." While the stock, or the funds arising from a sale of the stock or from a voluntary liquidation of any bank, remained in the widow's hands, no distinction is made with reference to the profit arising therefrom,—whether in the form of dividends upon the stock, interest upon the money or profit upon the investment. It is all treated as income and is given to the widow for life.

As showing the intention of the testator with reference to the division of his bank stock upon the death of the widow, we think the first part of paragraph 24 of the will has an important bearing. The testator there provides in what proportions he desires his bank stock divided among his children in case he shall survive his wife, and provides that in case any of his children shall die before he dies, leaving a child or children them surviving, such child or children shall take the share of the parent, and that in case a child shall die before he dies, without leaving a child or children him surviving, the share or shares of such deceased child shall be divided in equal parts among his surviving children, and that the surviving children of any of his children shall take the share which their deceased parent would have taken if living, thereby clearly manifesting an intention that the principal of his bank stock should be divided among his children and the children of his deceased children. In the same paragraph, after devising the income of the bank stock to his wife for life if she should survive him, upon her death he divides the bank stock among his children in the same proportion he had pro-

vided it should be divided among them upon his death in case he should survive his wife, and then provides that it is his intention that in case his wife survive him none of his children or their children or descendants shall take any vested interest in said stock until after the death of his wife, and that they shall not have the ability to transfer it, and it shall not become liable for their debts by attachment, execution or other legal process, and in case of his widow's death subsequent to his death, limited the right of his children or their descendants to take said bank stock to those who should survive his widow.

It is conceded said limitation applies to the bank stock and to the principal in the hands of the widow at the time of her death, derived from the sale of bank stock, but it is said that no such limitation applies to the fund in the widow's hands received from the banks which had gone into voluntary liquidation. The clause of the will which disposes of the bank stock, and the proceeds thereof, after the death of Lemira P. Gillett, reads as follows: "If my said wife shall survive me, I give and bequeath all my bank stock that shall remain unsold at the time of her death, and all money arising from the sale of said bank stock by my wife, in manner following," etc., which clause does not include the moneys received from the banks which have gone into voluntary liquidation, unless the following or similar words, "and moneys received by her from banks which have gone into voluntary liquidation," can be legitimately read into that clause of the will, and it is earnestly insisted by the appellants to read such words into that clause of the will would be to make a new will for the testator. If the effect of reading into that clause of the will the words above specified would be to change the clause and to make it include something which it did not include before, manifestly the words cannot be read into the clause. But we do not so view the matter. The

words are read into the clause to make plain what is the manifest°intention of the testator, considering the will as a whole, but which intention the testator has not accurately or completely expressed by the words he has used. And the authorities are clear this may be done. In *Glover* v. *Condell,* 163 Ill. 566, on page 584, the language of Mr. Jarman in his work on Wills, (2 Rand. & Tal. 5th Am. ed. p. 60,) is quoted with approval. He there says: "It is established that where it is clear on the face of a will that the testator has not accurately or completely expressed his meaning by the words he has used, and it is also clear what are the words which he has omitted, those words may be supplied in order to effectuate the intention as collected from the context." And in that case the court read into the will the words "of the income," or "of the interest," or "of the dividends," the insertion of which words, it was said, "effectuates the clear intention of the testator and is necessary to give expression to his meaning." To the same effect is 29 American and English Encyclopedia of Law, (1st ed. p. 372,) where it is said: "Where it is clear on the face of the will that the testator has not accurately or completely expressed his meaning by the words he has used, and it is also clear what are the words which he has omitted, those words may be supplied in order to effectuate the intention as collected from the context."

A glance at paragraph 23 of the will, wherein the testator directs that all of his personal property, other than bank stock, shall be divided in stated proportions among his children, shows that the testator considered the bank stock, and the funds which might arise therefrom,—and so treated it,—as having been fully disposed of by other provisions of the will, and the clause in relation to the disposition of the fund arising from banks in liquidation and the clause in relation to the disposition of the fund proceeding from sales of stock are in substantially the same language, and both refer to future

directions in the will for the distribution of both funds. It would seem to follow that the provision, "I give and bequeath all my bank stock that shall remain unsold at the time of her death, [the widow's death,] and all money arising from the sale of said bank stock by my wife, in manner following," should be held to cover and include all money from both sources. If this position be not correct, then it would appear the testator, when dealing with these two funds, intentionally disposed of one fund and left the other to pass under the residuary clause of the will, although both funds were the proceeds of bank stock received by the widow subsequent to his death. This is not probable. In paragraph 24 of the will it is provided that in case any of the children of the testator should die before his wife leaving a child or children, then such child or children should take in equal parts the share or shares of said bank stock and money which his, her or their deceased parent or parents would have taken in the event of surviving the wife of the testator; again, that if any child of the testator should die leaving no child before the death of his wife, then the share of such child in such bank stock and money should be divided among the surviving children of the testator or their descendants; and further, that none of the children or descendants of children of the testator shall take any vested interest in said stock or money until the death of the wife. It seems apparent the money arising from stock in liquidated banks, as well as money derived from sales of stock by the widow, was alluded to in these clauses of the will when the testator spoke in general terms of bank stock and money; and this reference to money in this connection strengthens the position that the testator intended to dispose of all moneys derived from both the sale of stock and the liquidated banks to his children or their descendants who survived the widow, by the provisions of his will, other than the residuary clause.

Our conclusion is, that the fund in the hands of Lemira P. Gillett received from banks which had gone into voluntary liquidation, upon her death went, under the terms of the will of John D. Gillett, deceased, to his children who survived his widow.

The next question presented for determination is, did the one hundred shares of stock of the First National Bank of Lincoln represented by certificate No. 122, issued to Lemira P. Gillett as a stock dividend, belong to her at the time of her death, and pass, by virtue of her will, to Charlotte L. Barnes as trustee, or did the same belong to the estate of John D. Gillett, deceased, and pass to his devisees, under the terms of his will, at the death of Lemira P. Gillett? It appears that the stock issued to Lemira P. Gillett was paid for with the earnings of said bank which had accumulated prior to the death of John D. Gillett. In the case of *DeKoven* v. *Alsop*, 205 Ill. 309, it was held that a stock dividend which evidenced a conversion by the corporation into capital of earnings accumulated during the stockholder's lifetime goes to the remainder-men as a part of the *corpus* of the estate, and not to the life tenant under a will devising the income of the estate to the testator's widow for life and directing the residue to be divided among others at her death. That case considers all the questions urged upon the consideration of the court bearing upon the phase of this case now under consideration, and is conclusive against the right of Charlotte L. Barnes, as trustee, to hold the stock issued as a stock dividend to Lemira P. Gillett by the First National Bank of Lincoln.

The contention is made by appellants other than Charlotte L. Barnes, that if it is held certificate No. 122 does not pass to Charlotte L. Barnes as trustee, then the shares represented by said certificate are so far intestate property that they pass under the residuary clause of the will of John D. Gillett, deceased, to all his children, which would include the devisees of his deceased

children. We do not agree with this contention. In *Gibbons* v. *Mahon*, 136 U. S. 549, it is said: "A stock dividend really takes nothing from the property of the corporation and adds nothing to the interests of the shareholders. Its property is not diminished and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property. The aggregate interests therein of all the shareholders are represented by the whole number of shares, and the proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of the new ones." The new shares of stock represent the surplus earnings of the bank and go to the remainder-men under the will of John D. Gillett, deceased, the same as the surplus or improvements made with the surplus would have gone had no stock dividend been made. In *Minot* v. *Paine*, 99 Mass. 101, the court said (p. 107): "It is obvious that if the directors had made no stock dividend but had invested the income in permanent improvements, making no increase of the number of shares, the improvements would have been capital, belonging to the legatees in remainder."

We think it clear that certificate No. 122, upon the death of Lemira P. Gillett, became the property of the children of John D. Gillett, deceased, who survived Lemira P. Gillett, his widow.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*