**Virginia Haines Heckler, Appellant, v. Kate S. Young et al., Appellees.**

**Gen. No. 35,366.**

Opinion filed December 28, 1931.

CLOYES & KLINGLER and C. E. HECKLER, for appellant.

THOMAS J. YOUNG, for appellees.

Mr. Justice McSurely delivered the opinion of the court.

Complainant filed her bill, asking for a construction of the will of Annie Donahue, deceased. Answers were filed and a reference had to a master in chancery who heard the evidence and made his report recommending a decree favorable to complainant. The chancellor sustained exceptions to this report, ordered the bill dismissed for want of equity and held that the costs and amount of attorneys' fees should not be taxed against the estate.

The paragraph of the will involved is as follows:

"Third: I give, devise and bequeath to Virginia Heckler (nee Haines), of Chicago, Illinois, thirty (30) shares of capital stock of Union Carbide & Carbon Corporation. In the event that I should not be possessed of said shares of capital stock at the time of my death, then I direct that the said Virginia Heckler receive from my estate an amount in cash equivalent to the market value of said stock hereinabove devised to her, said market value to be fixed as of the date of this my last Will and Testament."

Complainant claims that at the time the will was executed the Union Carbide & Carbon Corporation (hereafter called the Carbon corporation) was in the process of increasing the number of the shares of its stock so that each stockholder would receive three shares for each share theretofore owned; that when the will was executed the testatrix owned 70 shares which subsequently were increased to 210 shares, and complainant contends that in view of these circumstances the bequest to her should be construed so as to give her 90 shares of the new stock instead of 30. The theory of defendants was that there is no ambiguity in the will; that when testatrix died she owned 210 shares of the new issue and that complainant is entitled only to the number of shares mentioned in the

will, namely, 30 shares of this issue. This position was sustained by the chancellor.

It was shown that one share of the new stock has a market value of about one-third of the old, hence if complainant receives 30 shares of the new stock she will receive stock worth one-third the value of 30 shares of the old. If she receives 90 shares of the new she will receive an equivalent of 30 shares of the old.

The master held that the testatrix did not possess the 30 shares when she died, hence the alternative in the paragraph of the will became operative, and that complainant should receive an amount in cash equivalent to the market value of said stock as of the date of the will. This was found to be $254 a share, and the 30 shares would be worth $7,620. The master recommended a decree accordingly. The complainant in her brief does not concede that the bequest failed, as found by the master, and argues that the mere change in form of an object bequeathed does not cause its failure.

We cannot agree with the contention of defendants that in view of the apparently unambiguous language of the will, evidence of the attending circumstances was incompetent. It is the established rule that equity will entertain the construction of a will which, though clear on its face, discloses a latent ambiguity when read in the light of extrinsic facts. Among the many cases so holding are *Decker v. Decker,* 121 Ill. 341; *Whitcomb v. Rodman,* 156 Ill. 116; *Graves v. Rose,* 246 Ill. 76; *Cochran v. Cochran,* 277 Ill. 244; *Wahl v. Schmidt,* 237 Ill. App. 372. While extrinsic evidence is never admissible for the purpose of varying the intent as expressed in the will itself, yet such evidence is admissible to enable the court to read the will in the light of the circumstances surrounding the testator at the time the will was made so as to aid the court in

determining the intention. *Bimslager v. Bimslager,* 323 Ill. 303.

Annie Donahue, the testatrix, died August 28, 1929; she was then about 78 years of age; she had never married; her estate consists entirely of stocks and bonds valued at approximately $48,000. Complainant is not related to the testatrix but their family ties were close. From about 1870 until the death of complainant's grandmother in 1901, testatrix lived in the family of Mr. and Mrs. Haines, complainant's grandparents. After 1901 their daughter, Elizabeth Haines, who was the aunt of complainant, lived with the testatrix in terms of close companionship. Elizabeth Haines died in 1925 and by her will the testatrix received, as residuary legatee, 50 shares of stock of the Carbon corporation. At this time testatrix owned in her own right 20 shares of stock in this corporation which with the bequest from Elizabeth Haines gave her ownership of 70 shares. Shortly thereafter, on December 9, 1926, testatrix made a will in which she bequeathed to complainant 30 shares of the capital stock of the Carbon corporation.

In January, 1929, the instant will was drafted and typewritten in the office of Thomas J. Young, testatrix's solicitor, who with Kate Young are the executors. This will was not signed until about four months later. This second will also bequeathed to complainant 30 shares of the stock of the Carbon corporation, as in the prior will.

March 19, 1929, the Carbon corporation mailed to its stockholders from its office in New York City a notice of the annual meeting to be held in New York on April 16. It was stated in the notice that one matter to be considered and acted upon was a proposition to increase the authorized number of shares from 3,000,000, no par value, to 12,000,000, no par value, and to change the existing issue of 3,000,000 shares into 9,000,000 by exchanging three shares of the new stock

for each share of the old stock. A form of proxy was prepared, to be returned by the stockholders, and apparently this was returned by the testatrix.

April 16, the meeting of the stockholders was held and the proposed increase and the exchange of stock on the basis of 3 for 1 was authorized, and the officers were directed to file a certificate as directed by statute, to carry into effect the increase and exchange in shares. Under the laws of New York such increase is effected by filing a certificate with the Secretary of State.

April 22, the corporation mailed a circular letter to its stockholders, including testatrix, informing them that the proposed action of increase in stock had been authorized and that the certificates of the new shares would be ready for delivery on and after May 9. The letter also requested the stockholders to forward their old certificates unindorsed for exchange, and stated that old certificates would not be issued after May 8, but it was expected that the old stock would continue to be listed on the exchanges for approximately one week after May 8. April 26, pursuant to this notice, testatrix delivered to the corporation her certificates, unindorsed, for her 70 shares of stock and a receipt was mailed to her showing that she was entitled to 210 shares of the new stock.

May 6, the will in question was executed by the testatrix.

May 8, the certificate of increase and change of the corporation was filed with the Secretary of the State of New York. The exchange of stock was made on and after May 9. None of the new shares were issued by the corporation prior to this date. New certificates for 210 shares were issued to testatrix dated May 9 and delivery was made to her after May 12.

The new stock was first listed on the exchange May 9 and trading in the old stock ceased on May 18. The market value of the old stock on May 6, the date

of testatrix's will, was $254⅜ per share. After May 9 and up to May 18, both the old and new shares were traded in and the market value of the new shares during this time was approximately one-third the market value of the old shares. There was in evidence a provision of the laws of New York to the effect that if any shares of a corporation should be changed into a different number of shares of the same class, the corporation shall be deemed to have received for the issuance of the new shares the amount of the capital represented by the old shares.

In addition to the bequest to complainant, the will contains nine gifts of money to various individuals, and the residue of her estate was left to her executors, Kate and Thomas J. Young, to be expended for charitable and religious purposes, ''as in their judgment might be deemed most suitable and proper.'' At the time of the death of testatrix her estate was amply sufficient to pay all pecuniary bequests, to satisfy complainant's bequest however construed, and to leave a substantial amount in the residuary estate.

It is axiomatic that in determining such a question as this the court should attempt to put itself in the place of the testator for the purpose of arriving, if possible, at the intention of the testator. It has been aptly expressed that to arrive at the intention the court ''sits in the testator's armchair.'' *Boyle v. Moore,* 299 Ill. 571; *Wallace v. Noland,* 246 Ill. 535; *Bingel v. Volz,* 142 Ill. 214; *Himmel v. Himmel,* 294 Ill. 557. While it is the general rule that a will speaks from the death of the testator, yet this rule has limitations where there are circumstances which indicate that to enforce the rule will not carry out the intention of the person making out the will. In *In re Mandelle's Estate,* 252 Mich. 375, the court said: ''It is more accurate to say that a will is not operative until the death of the maker and then speaks the intention of the maker at the time of its execution.'' Cases on

wills cited may guide us in the general rules on the construction of wills, but unless such cases are identical in every respect and the circumstances are like those in question, they can be of little help to the court. Precedents and rules are frequently of slight value in the interpretation of wills, as such instruments are rarely, if ever, identical in wording, and are often not even similar. *O'Hare v. Johnston,* 273 Ill. 458.

A consideration of the circumstances surrounding the execution of the present will leads us to conclude that it was the intention of the testatrix to bequeath to complainant 30 shares of the 70 shares of stock of the Carbon corporation owned by her prior to the exchange, and not 30 shares out of the 210 shares of the new stock. The testatrix and the family of the complainant had been on the closest terms of friendly intimacy since 1870; complainant's aunt and the testatrix lived together as companions for 24 years; complainant's aunt left the testatrix 50 shares of stock of the Carbon corporation; shortly thereafter the testatrix made a will bequeathing to complainant 30 shares out of the 70 shares of stock of the corporation. Her remaining 40 shares were bequeathed to another person, Agnes Rigney. The will remained in this condition for a little more than two years, and when it was redrafted virtually the only change made was the elimination of this gift of 40 shares to Agnes Rigney. In this redraft the date of the will and of the acknowledgment is typed "January, A. D. 1929"; when it was signed, apparently thereafter, a line was drawn by pen through "January" and above this was written "May." It is reasonable to conclude that the testatrix intended by both wills that the complainant should have the same number of shares of the same class of stock. Her intention by the second will was with reference to the conditions existing at the time the will was drafted, namely, in January. The record does not disclose anything which might cause the testatrix

to change this bequest in the second will from what it had been in her first will; the language in both is identical.

Defendants argue strongly that at the time the will was signed the testatrix knew that the proposed exchange of stock was in process of being effected, and that from this date, May 6, to the following August when she died, she made no attempt to change the wording of this bequest. On the other hand, it is reasonable to suppose that the testatrix had in mind that she had definitely described the shares which she intended complainant to have and assumed that these shares, after the increase in the whole number of shares, would pass to complainant in their changed form of 3 for 1. A similar situation was involved in *Fidelity Title & Trust Co. v. Young,* 101 Conn. 359, where the court said, "As to the argument derived from the testator's failure to change his will after the par value of the stock was reduced, it is enough to say that if we have correctly interpreted testator's original intent, he might well suppose that there was no occasion to make any change." Furthermore, a stock split-up in shares, without a change in the comparative interest in the corporation is merely a change in form and does not cause a change in the nature of the shares thus effected. *Blinn v. Gillett,* 208 Ill. 473; *DeKoven v. Alsop,* 205 Ill. 309.

There is also a persuasive reason indicating the intention of the testatrix to leave complainant the 30 shares of the original stock or its equivalent in the new issue, which is found in the language of the third paragraph of the will itself. After bequeathing to complainant 30 shares of stock follows the alternative bequest that, in the event the testatrix should not be possessed of said shares of stock at the time of her death, "then I direct that the said Virginia Heckler (complainant) receive from my estate an amount in cash equivalent to the market value of said stock here-

inabove devised to her, said market value to be fixed as of the date of this my last Will and Testament." Manifestly, it was the intention of the testatrix in the event that she did not possess the stock at the time of her death, to give to complainant its equivalent in cash. The date on which the market value of the stock was to be fixed is the date of her will, and when this was written the date was in January, 1929, although subsequently this was changed to May 6.

If, after the increase of stock had been completed and testatrix had received the new certificates for 210 shares, she had sold them, then in that event, under the alternative provision of paragraph three, complainant would receive cash equivalent to the market value of the stock devised as fixed by the market value on the date of the will, that is, May 6th. This provision could only refer to stock then owned by testatrix on that date. Did she then own 70 old shares or 210 new shares? As the increase in the capital stock was not effected until May 8, the new certificates not issued until May 9, and the old stock was traded in on the exchange until May 16, the better argument favors the conclusion that on May 6 she owned 70 shares of the old stock. If this is true, and she had subsequently disposed of her stock, complainant would receive in cash approximately $7,620, but if she retained her stock complainant would receive, according to defendants' theory, shares having a value of only one-third of this amount. It is unbelievable that any such result was intended. It is more rational to believe, in view of all the circumstances we have referred to, that the intention was to give to complainant 30 shares of old stock or its equivalent in new stock or, under the conditions stated, in cash.

From what we have said it is clear that complainant was entitled to her costs and a reasonable allowance for solicitors' fees. *Guerin v. Guerin*, 270 Ill. 239, and cases there cited.

Complainant asks for the dividends paid on the 90 shares of stock since the death of decedent, citing *In re Security Trust Co.*, 221 N. Y. 213; *In re Largue's Estate*, 267 Mo. 104, 183 S. W. 608; *Sherman v. Riley*, 43 R. I. 202, 110 Atl. 629. This does not seem to be controverted, and these dividends should be allowed to complainant.

For the reasons indicated we hold that it was error to dismiss the complainant's bill for want of equity, and the decree is therefore reversed and the cause remanded with directions for further proceedings consistent with what we have said in this opinion.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and MATCHETT, J., concur.