Ann J. Allen, Edna M. Sargent and Ruth E. Nugent, Plaintiffs-Appellees, v. National Bank of Austin, a National Banking Association, Defendant-Appellee, Myra Johnson, Joseph H. Allen, Lilly Woodfin, Fifteenth Church of Christ, Scientist, a Religious Corporation, Defendants, and Home for Destitute Crippled Children, a Not-for-Profit Corporation, Defendant-Appellant.

Gen. No. 47,324.

First District, First Division.

September 29, 1958.

Released for publication October 23, 1958.

Pritchard, Heath, Montgomery & Pennington, of
Chicago (John R. Heath, David M. Sloan, of counsel)

for Home for Destitute Crippled Children, defendant-appellant.

Holton, Tews & Abbey, of Chicago (Charles R. Holton, of counsel) for plaintiffs-appellees.

JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal by the residuary legatee, Home for Destitute Crippled Children, from an order directing the executors of the estate of Lillian E. Allen to distribute to the plaintiffs shares of corporate stock which accrued as the result of stock splits, together with dividends paid thereon after the testatrix's death. Lillian E. Allen, a spinster 80 years old, executed her will November 15, 1950. Her estate at the time of the will and at the time of her death consisted of household goods, cash and shares of stock in six corporations. Two of these corporations, General Electric Company and General Motors Corporation, declared stock splits on the basis of three shares for one. General Electric Company distributed its stock June 11, 1954 and General Motors Corporation, November 7, 1955. The testatrix died December 16, 1955. The question presented is whether the trial court properly directed distribution of these additional shares to plaintiffs as legatees under the will.

The will, after bequeathing household goods and personal effects to her cousin, Myra Johnson, provided:

"I give and bequeath unto my sister-in-law, Ann J. Allen, . . . 330 shares of General Motors common stock."

In the same language the testatrix bequeathed the following:

To Joseph H. Allen, nephew, 70 shares of American Telephone and Telegraph Company stock and 40 shares of Wm. Wrigley, Jr. Company common stock:

151

To Myra Johnson, cousin, 440 shares of Commonwealth Edison Company common stock;

To Lilly Woodfin, friend, 150 shares of Walgreen Company common stock;

To Deaconess Ruth M. Sargent, friend, 140 shares of General Electric Company common stock;

To Ruth E. Holmes, friend, 60 shares of General Electric Company common stock; and

To Fifteenth Church of Christ, Scientist, 50 shares of Wm. Wrigley, Jr. Company common stock.

The residue was given to the Home for Destitute Crippled Children.

Approximately a month prior to execution of the will, the testatrix brought a memorandum entitled "Last Will of Lillian E. Allen" to Glen H. Tyrrell, secretary and trust officer of the National Bank of Austin. The memorandum listed the various legacies in the same manner as finally stated in the will. *It did not contain a residuary clause.* The bank prepared a draft based upon the testatrix's memorandum but added a blank residuary clause. That document was mailed to the testatrix, who returned it to Mr. Tyrrell with her approval and with instructions for completing the residuary clause. A second draft in practically the final form of the will was forwarded to the law firm of Castle, Brintlinger & Carey, where the instrument which was to become the last will and testament of Lillian E. Allen was finally concluded. The inventory of the testatrix's estate disclosed that at her death she was the owner and possessor of the identical shares of stock disposed of in her will, except for the additional shares issued by reason of the stock splits. In addition, she had cash in the sum of $14,175.96 in a savings account in the Northern Trust Company and $495 among her personal effects.

■ ■ The guiding principle in the interpretation of any will is the intention of the testator, which is another way of admonishing the court to keep in mind that the business at hand is determining what the testator willed by his will. This is determined, primarily, by the language specifically relating to the matter in dispute and by the will as a whole, so that the particular language may be construed in the context of the entire will and conform to the general purpose and plan of the testator. The will represents an apportionment of her estate according to what she considered to be her obligations, affections, friendships and duty to charities. There is seldom anything precisely measurable in such distribution, but examining the whole reveals purpose and intent. Thus we know that the testatrix wanted her relatives and friends to have the great bulk of her estate and that she had one favorite charity, the Fifteenth Church of Christ, Scientist, to which she gave 50 shares of Wm. Wrigley, Jr. Company common stock. We know also that the residuary clause was added after she had determined on a substantially complete disposition of her estate, providing for her relatives, friends and church. To give the residuary legatee the additional shares of General Electric and General Motors stock would amount to giving it a legacy of the value of approximately $50,000 as of January 1958, or $12\frac{1}{2}$ times as much as to the charity for which the testatrix had expressly made provision, four times as much as she gave her sister-in-law, three times as much as she gave her cousin, and in more or less similar proportions to the provisions made for her other legatees. It appeared to the trial court and it does to us that the testatrix, having at the time of her death the identical shares of stock she had at the time she made her will (except for the additions growing out of stock splits), intended to dispose of all her corporate shares to the legatees named,

and that at the time of the making of the will there was no residue of shares. All that was left for the residuary legatee was the balance in the bank account after the payment of expenses and taxes.

█ For the purpose of ascertaining a testator's intention a will speaks from the date of its execution. Lydick v. Tate, 380 Ill. 616 (1942); Heckler v. Young, 264 Ill. App. 34 (1931); In re: Mandelle's Estate, 233 N. W. 230 (Mich. 1930). In Lydick v. Tate, supra, the court said, p. 627:

"It is true that for the purpose of ascertaining the effect and operation of a will, it speaks from the death of the testator. (Levings v. Wood, 339 Ill. 11; Thompson v. Thompson Carnation Co., 279 id. 54.) Nevertheless, for the purpose of ascertaining the testator's intention, a will must necessarily speak from the date of its execution. As said by Mr. Justice McSurely in Heckler v. Young, 264 Ill. App. 34, quoting from In re: Mandelle's Estate, 252 Mich. 375, 'It is more accurate to say that a will is not operative until the death of the maker and then speaks the intention of the maker at the time of its execution.' " Since gifts of shares of stock cannot mean gifts of pieces of paper, the testatrix must have intended that "shares" meant the proportionate share of the total outstanding stock of the companies as of the date of her will. If it were otherwise, the testatrix's will would be subject to change and even to virtual negation by the action of the management of any of the corporations in which stock was bequeathed. Of course, that could be provided against, but as the litigated cases reveal, the prospect of such contingencies arising does not occur even to the experienced and careful. Stock has been split not only on a basis of 2 or 3 to 1, but at times on a basis of 4, 5, 10, 29 and 100 for 1. A 29 for 1 split was referred to in Eisner v. Macomber, 252 U. S. 189 (1920), and the 100 for 1 split was that of the Times-Mirror Co.,

154

April 3, 1956, referred to in Moody's Industrial Manual, 1958, p. 1226.

██ A stock split changes only the *evidence* of the proportionate interest of shareholders. It adds nothing of substance to the shares of stock. Towne v. Eisner, 245 U. S. 418, 426 (1918); Eisner v. Macomber, 252 U. S. 189 (1920); In re: Rees' Estate, 311 P.2d 438 (Ore., 1957); Heckler v. Young, 264 Ill. App. 34, 42 (1931); In re: Fitch's Will, 281 App. Div. 65, 118 N.Y.S.2d 234 (3rd Dept. 1952); In re: McFerren's Estate, 76 A.2d 759, 762–3 (1950); Fidelity Title & Trust Co. v. Young, 125 A. 871 (Conn., 1924). Stock splits sometimes are followed by an increase in the market value of the stock. This may be because the issuance of additional stock represents a change in an ultraconservative dividend policy or the announcement of an intention to continue the same dividend or to pay a dividend which will on the whole be an increase from the one theretofore given. It is also well known that a lower priced stock may interest a larger public. These factors generally produce a small increase in market price. Thus, in the instant case, the market price of the General Motors stock prior to distribution had risen to $142 per share, and General Electric to $115 per share. After issuance, the price of General Motors new stock was $48.125 per share, and the price of the General Electric new stock was $39.3125 per share. The market evidently recognized that no real value was created by the split.

 In their consideration of this question, many courts have followed a highly formalized method of reasoning. They say if a legacy is specific, accretions go to the specific legatee; if general, they do not. The difference between a general and a specific legacy is set forth in Lenzen v. Miller, 378 Ill. 170, 174–5 (1941) which defines these legacies as follows:

155

"A general legacy is a gift of personal property by will, not amounting to a bequest of a particular thing or of particular money or of a particular fund which is designated and distinguished in the will from all others of the same kind. A specific legacy is a bequest of a specific article or of a particular fund which the will distinguishes from all the rest of the testator's estate of the same kind."

The purpose of so classifying bequests is two-fold, to determine the order of distribution in the event the estate is inadequate to satisfy all the gifts and to determine whether or not a bequest is adeemed in the event the asset is disposed of between the time of execution of the will and the time of death. Thus, if the bequest is of a specific chattel and the chattel is not in the estate at the testator's death, the specific legatee will receive nothing, while a general legatee will receive the equivalent of his bequest in money or kind. Since it is presumed that testators intend that their beneficiaries receive something, courts favor a construction of general legacy because only a specific legacy can be adeemed. In the instant case the estate is more than adequate to cover all bequests, and the rationale behind the classification of legacies is not pertinent for our purposes. Therefore, many of the cases in which these symbols have been used to characterize bequests are not germane to the instant case. In most cases where a stock split or stock dividend was involved, nothing more than lip service has been paid to the classification. Instead, courts have sought to find the intention of the testator, and almost always have found that the additions of stock in stock splits go to the legatee, as a consideration of the cases will reveal.

Heckler v. Young, 264 Ill. App. 34 (1931) is the only Illinois case which involves a stock split after execution of the will but before death. In that case the testa-

trix bequeathed to the legatee 30 shares of capital stock of Union Carbide & Carbon Company. She then provided that if she did not possess the shares of capital stock at the time of her death, the legatee receive from her estate an amount in cash equivalent to the stock bequeathed, the value to be fixed as of the date of the will. At the time of the execution of the will the corporation was in the process of creating a stock split of three for one, as in the case before us. The court held that the legatee was entitled to the additional shares. The court said, p. 42:

"On the other hand, it is reasonable to suppose that the testatrix had in mind that she had definitely described the shares which she intended complainant to have and assumed that these shares, after the increase in the whole number of shares, would pass to complainant in their changed form of 3 to 1. A similar situation was involved in Fidelity Title & Trust Co. v. Young, 101 Conn. 359, where the court said, 'As to the argument derived from the testator's failure to change his will after the par value of the stock was reduced, it is enough to say that if we have correctly interpreted testator's original intent, he might well suppose that there was no occasion to make any change.' Furthermore, a stock split-up in shares, without a change in the comparative interest in the corporation is merely a change in form and does not cause a change in the nature of the shares thus effected. Blinn v. Gillett, 208 Ill. 473; DeKoven v. Alsop, 205 Ill. 309."

The case of In re: Fitch's Will, 281 App. Div. 85, 118 N.Y.S.2d 234 (3rd Dept., 1952) makes clear that the controlling consideration is the intention and not the classification and that a general as well as a specific legatee may be entitled to the additional shares in a stock split. There the testator had bequeathed all the shares he owned at the date of his will. Thereafter he disposed of his stock. Before his death but after

the disposition of the stock there was a three for one split. The reviewing court affirmed the lower court's decision that the bequests were general legacies and "that the sale of stock by testator during his lifetime did not adeem these legacies." The court upheld the Surrogate's direction to the administrators to acquire and deliver to the legatees not only the number of shares stated in the will, but the additional stock, and said, p. 236:

"Respondents argue that merely because it has been held, as it was, in Matter of Hicks' Will, 272 App. Div. 594, 74 N.Y.S.2d 246, that a specific legatee is entitled to the equivalent number of shares following a stock split, it does not necessarily also follow that the converse must be held that a general legatee is never entitled to such a benefit.

"There seems no authoritative case in New York holding against the result reached by the Surrogate and his decision turned upon his evaluation of the testator's intent. What the testator intended to do is the ultimate aim in all will construction, and the rules that have been made are all bent in this direction. The intent, of course, is carried out if it is not unlawful."

In the case of In re: McFerren's Estate, 76 A.2d 759, 762–3 (Pa., 1950) the testatrix was the owner of 100 shares of stock at the time of the will. She bequeathed 50 shares each to two legatees. Later the testatrix exchanged these 100 shares for 250 shares during a stock split. The trial court ruled that the bequest of 50 shares referred to 50 shares of the exchanged stock. It based its finding on a statute which provided that a will speaks as if executed immediately before death, referring to Section 9 of Wills Act, 1917, P. L. 403. The Pennsylvania Supreme Court reversed the trial court and found that the legacies were general and that the legatees were entitled to the stock or its value as contemplated at the date of the will; that the

intention of the testator governs concerning identity or value of a legacy; that what the testatrix manifestly intended was to bequeath to each legatee 50 shares of the common stock as it was at the time of the making of the will, the equivalent of which was 125 shares as of the time of death.

In the case of In re: Rees' Estate, 311 P.2d 438 (Ore., 1957) a legacy bequeathed "the twenty-five shares of the United States Steel stock which I possess." The issue was stated to be whether or not the testatrix intended that additional shares issued as a result of a stock split should be treated as a part "of the specific bequest of 25 shares . . . or become a part of the residuary estate." The court found that the stock split was merely a change in form, quoting from Heckler v. Young, supra. The cases were reviewed and the court came to the conclusion that the additional stock issued as a result of the stock split should pass to the legatee of the original shares. The court made a distinction between a stock split and a stock dividend, the pertinency of which is obscure to us, because the court says specifically that with respect to enlargement or disturbance of the corporate net worth, a stock split and a stock dividend are alike, and cites Stipe v. First National Bank of Portland (Ore. 1956), 301 P.2d 175, 186. If that be so in that case and in the one before us, it would make no difference whether it was denominated a stock split or a stock dividend.

Defendant cites the companion cases of First National Bank of Boston v. Union Hospital, 183 N. E. 247 (Mass. 1932) and First National Bank of Boston v. Charlton, 183 N. E. 250 (Mass. 1932) in support of the proposition that the issue must turn on whether the legacy is specific or general. These cases involved a determination of the effect of a stock split and a stock dividend on bequests under the same will. In the Union Hospital case which involved a specific legacy, the

159

executor conceded that the legatees were entitled to the split stock and the only issue was the distribution of the stock dividend. The court held for the executors because it found that the testator had not *intended the legatees* to take the stock dividend. The Charlton case would appear to be inconsistent with the Union Hospital case because once the court decided that the testator intended the bequest to be a general legacy it refused to consider the testator's intent with respect to the distribution of the split shares and the stock dividend as it had done in the Union Hospital case after determining that the bequest was a specific legacy. The court also refused to consider the effect of a stock dividend and a stock split and held that the legatees were not entitled to the additional shares. In Davis v. Price, 226 S.W.2d 290 (Tenn. 1949) the court was constrained to deny the legatee the split stock because it construed the will under a statute which provided that a will shall be construed to speak and take effect as if it had been executed immediately before the death of the testator. This is not the rule of construction in Illinois, and as we had previously noted in the case of In re: McFerren's Estate, supra, the Pennsylvania Supreme Court did not feel itself precluded by a similar statute from finding that the legatees were entitled to the stock as contemplated at the date of the will.

We hold that in the absence of an intention to the contrary, a legatee of shares of stock is entitled to additional shares issued as a result of a stock split occurring after execution of the will.

It is argued that the public policy of this state strongly favors gifts to charity. Such gifts are looked upon with favor, and where the will to bequeath is evident, all presumptions consistent with the language used will be indulged to sustain them. Webb v. Webb, 340 Ill. 407, 420 (1930); Morgan v. National Trust Bank, 331 Ill. 182 (1928); Walker v. Central

160

Tr. & Sav. Bank, 318 Ill. 253 (1925) ; Skinner v. Northern Trust Co., 288 Ill. 229 (1919). First, however, the gift must appear evident. Courts are not expected to diminish their efforts to arrive at a true construction of the will in order to favor a charity as against another legatee. In the instant case, it appears clear to the court that the testatrix did not intend to make the gift to charity as contended for by defendant-appellant.

Judgment affirmed.

McCORMICK, P. J. and ROBSON, J., concur.