219 A.2d 389.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND AS TRUSTEE u/w OF WARREN R. FALES *vs.* CARRIE E. AUSTIN *et al.*

MAY 3, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

Powers, J. This is a bill in equity brought by the complainant as trustee under the will of Warren R. Fales, late of East Providence. It prays for construction of the third clause of the will and for instructions thereunder. When the cause was ready for hearing for final decree in the superior court it was certified to this court in accordance with the provisions of G. L. 1956, §9-24-28.

All the necessary parties are of full age, sui juris, and having been served as respondents entered their appearances and submitted the cause on an agreed statement of facts. For convenience we will hereinafter refer to Carrie E. Austin and Arthur V. Fales as the respondents.

It is established in the agreed statement that Warren R. Fales executed his last will and testament on July 1, 1919 and subsequently executed a codicil thereto on March 28, 1923. It substituted the instant complainant as executor of and trustee under the will for the originally-named fiduciary. See appendix I.

On January 15, 1924, however, the testator executed a second codicil which respondents contend is relevant in de-

termining the intention of the testator, their grandfather. See appendix II.

The stipulation further establishes that at the time the will was executed the testator had two sons, Harry Lee Fales and LeRoy Atherton Fales, and a granddaughter Harriet Lee Fales, Harry's daughter. She will hereafter be referred to as Harriet. Further, LeRoy was married to Annie L. Fales, nee Dukehart. They had no children when the will was executed. Subsequently, however, a son Samuel Fales was born on December 9, 1921, who lived only three days. His mother died shortly thereafter, on January 8, 1922.

The third clause of the will gives, devises and bequeaths the residuary estate to the executor as trustee and, after making the usual provisions for administering the trust, reads in pertinent part as follows:

"(b) After the payment of my debts as provided in section (a) hereof, the remaining net income shall be paid to my sons LeROY ATHERTON FALES and HARRY LEE FALES and my granddaughter, HARRIET LEE FALES, in the following proportions; one-half to said LeROY ATHERTON FALES; one-quarter to said HARRY LEE FALES, and one-quarter to said HARRIET LEE FALES; said payments to be made at quarterly periods as nearly as possible and to continue during the lives of said LeROY ATHERTON FALES, HARRY LEE FALES, and HARRIET LEE FALES.

"(c) In the event of the death of said LeROY ATHERTON FALES leaving children by his present wife, Annie L. Fales, and HARRY LEE FALES or HARRIET LEE FALES surviving the death of said LeROY ATHERTON FALES, then the share of the net income payable to said LeROY ATHERTON FALES, provided for in section (b), shall be paid to his children in equal shares during the continuance of this trust, and, if there are no surviving children of LeROY ATHERTON FALES at his decease, then all of his said share of the income shall be paid to said HARRIET LEE FALES.

"(d) At the death of HARRY LEE FALES, HARRIET LEE FALES surviving at the time of his death, then the share of the net income payable to said HARRY LEE FALES provided for in section (b) hereof, shall be paid to the said HARRIET LEE FALES for her life.

"(e) If said HARRIET LEE FALES should die without leaving children surviving at her death, HARRY LEE FALES surviving her death, then the share of the income payable to said HARRIET LEE FALES provided for in section (b) hereof, shall be paid to said HARRY LEE FALES for his life, and if said LeROY ATHERTON FALES alone survive the death of HARRIET LEE FALES without her leaving children surviving her death as aforesaid, then the share of income payable to said HARRIET LEE FALES provided for in section (b) hereof, shall be paid to said LeROY ATHERTON FALES during his life.

"(f) At the death of HARRY LEE FALES, and LeROY ATHERTON FALES and HARRIET LEE FALES, the corpus of the trust property and any undivided income thereof, shall be conveyed, transferred and paid over absolutely and in fee simple per capita and not per stirpes to the children of HARRIET LEE FALES and LeROY ATHERTON FALES by his present wife, Annie L. Fales; and in the event of there being no children of either said LeROY ATHERTON FALES, by his present wife, Annie L. Fales, or children of said HARRIET LEE FALES, then said trust property above described is to be conveyed, transferred and paid absolutely and in fee simple to JOHN RICHMOND FALES, son of Jerome Richmond Fales and Elenora Bailey Fales."

It is further agreed that the testator died October 7, 1924, survived by his son Harry, his granddaughter Harriet, and his son LeRoy who had remarried after the death of his wife Annie L. Fales. Harry died May 22, 1962 and thereafter his daughter Harriet received his share of the income from the trust, as provided in paragraph (d) of the third clause. LeRoy died on November 21, 1964 survived by a son Arthur

V. Fales and a daughter Carrie Fales Austin, herein referred to as the respondents. They were born to LeRoy and Dorothy G. Fales whom LeRoy had married after the death of Annie.

Thereupon, Harriet claimed the right to receive LeRoy's share of the income, there being no surviving children of the union between LeRoy and Annie L. Fales. However, respondents also claim the income which their father had been receiving. The trustee, being in doubt as to its obligation under the trust, commenced the present proceedings, and praying for construction of the will specifically asks the following question: "Under the provisions of said Will, should your Complainant pay the one-half share of the net income to which the said Leroy Atherton Fales was entitled during his lifetime to the said Harriet Fales Falk during her lifetime, or to the said Carrie E. Austin and Arthur V. Fales in equal shares until the termination of said trust?"

The uncertainty of the trustee's obligation, as evinced by the question posed, arises out of the use of certain language employed by the testator in making his will and the effect thereon of the two codicils. The respondents contend that they, being children of LeRoy Atherton Fales living at his death, are entitled to the income that he was receiving under the terms of paragraph (c) of the third clause of the will.

This contention, however, is sharply contested by Harriet who argues that the qualifying language, "leaving children by his present wife, Annie L. Fales," was intended to embrace only children born to LeRoy and Annie; that the only child of that union having predeceased his father, Le-Roy did not leave any child eligible to succeed him as a life tenant; and consequently that LeRoy's share of the income is payable to her for life.

In refutation of this position, however, respondents argue that the addition of the name "Annie L. Fales" is meaning-

less as being redundant or descriptio personae; and that the preceding words, "by his present wife," are important for the reason that the execution of the second codicil constituted a republication of the will, citing *Merrill* v. *Boal*, 47 R. I. 274, and *DeMarco* v. *D'Errico*, 87 R. I. 117.

We are reminded that the second codicil was executed after LeRoy's marriage to Dorothy Gardiner Fales, so that with republication of the will respondents fall within the designation of "children by his present wife * * *." We are unable to agree.

The primary and well-settled rule of testamentary construction is to ascertain the testator's dominant intent from the will as a whole and give effect thereto, unless it is contrary to some established principle of law. *Smith* v. *Powers*, 83 R. I. 415; *Rhode Island Hospital Trust Co.* v. *Huntoon*, 94 R. I. 474. Clearly, in the instant cause the testator expressed an intention in paragraph (c) of the third clause of his will to make the income which LeRoy had been receiving in accordance with the provisions of paragraph (b) payable only to grandchildren born of the union of LeRoy and his wife Annie, should any such children survive their father. This event not occurring, the income would be payable to Harriet, provided she survived her uncle LeRoy. Any other construction would require an ignoring of the ordinary meaning one would naturally import to the phraseology employed by the testator.

Having reached this conclusion, it follows that with the death of Annie the right to the income at the death of the testator vested in Harriet subject only to the condition that she should survive LeRoy. Such was the provision for distribution of LeRoy's income when the testator executed his first codicil in March 1923 and substituted the present complainant for the Slater Trust Company as executor and trustee. The manner in which his largesse would be distributed under the circumstances prevailing when this codicil was

executed was known to the testator and, so knowing, he expressly included in said codicil a ratification of all of the provisions contained in his will, save that of the named fiduciary.

But, respondents stress, when the second codicil was executed on January 15, 1924, LeRoy was then married to Dorothy Gardiner Fales and Dorothy thereby became "his present wife" within the meaning of paragraph (c) of the third clause of the will. The respondents, being children born to LeRoy and Dorothy, contend that they qualify for the income paid to their father during his life, since they fall within the classification of those intended by the testator when he resorted to the language "leaving children by his present wife."

This contention is predicated on a combination of the propositions that the insertion of the first wife's name was mere redundancy and that the second codicil was tantamount to a republication of the will. Having rejected the first of these propositions, however, the doctrine of republication is of no avail since at the time the second codicil was executed the will made no provision other than the vesting in Harriet as aforesaid. There is a clear and persuasive inference to be drawn from the expressed provisions of the second codicil that, when executed, the testator was approvingly cognizant of the fact that under the terms of his will there could be no children of LeRoy who would be entitled to share thereunder.

By the so-called paragraph Second of said codicil he gave all of LeRoy's inheritance to Harriet for her use and benefit if, within five years of the testator's death, LeRoy had failed to comply with the obligation imposed on him in the so-called paragraph First. With LeRoy having remarried and children of that union a distinct possibility, it is not very likely that the testator would fail to provide therefor, if he intended that children born to LeRoy and Dorothy rather

than Harriet should succeed to the life estate bequeathed to their father.

In reaching the conclusion that identifying Annie L. Fales as LeRoy's "present wife" was not mere redundancy, we have not overlooked the circumstance stressed by respondents that all of the letters in her name were not capitalized, as is the case with "LeROY ATHERTON FALES" and all other beneficiaries. This circumstance, they argue, signified the unimportance given to her identity by the testator.

While it might be conceded that in some rare instances the use or nonuse of capital letters, punctuation and/or paragraphing may serve in helping to determine a testator's intention, recourse thereto is not ordinarily a realistic approach. Unless a testator were his own draftsman the probabilities are that he was neither aware of nor interested in styling so long as the document purporting to be his last will and testament carried out his wishes with regard to his estate. We do not perceive that there is any determinative significance in the circumstance to which the respondents refer.

Nor, contrary to their contention, does the testator's apparent failure to provide for a gift over of the income to Harry, should Harriet predecease him, serve to cast doubt on the testator's manifest intention to provide only for such of LeRoy's children as were born to Annie. Similarly, without significance in this regard is the apparent failure to provide for a gift over of LeRoy's income to Harry in the event of LeRoy dying and survived by neither children nor Harriet. If either of these contingencies had in fact happened it might conceivably have prompted the trustee to seek instructions, but none of these events having occurred contemplation of such possibilities is mere speculation and without significance here.

Furthermore, we have carefully studied the cases of *In re Hardyman*, 1 Ch. (1925) 287, and *First National Bank &*

*Trust Co.* v. *Baker*, 124 Conn. 577, cited and heavily relied upon by respondents for the proposition that the execution of the second codicil resulted in establishing Dorothy as "his present wife." The ultimate facts in the instant cause are so sharply at variance with those in the cases cited as to make the decisions in the cited cases, when properly considered, not applicable here. Indeed, in relating them and others to the facts in the instant cause, respondents apparently misconceive the scope of a republication of the original will resulting from the addition of a codicil. They appear to argue throughout that when there has been a change in the circumstances prevailing when the will was made, the effect of a codicil is to republish the terms of the will in the light of the altered circumstances. This would be true, of course, if the provisions in the will when made can be found to be applicable to the altered circumstances. If however, as here, the change in circumstances does not alter the intention of the testator as expressed in his will, such changes are without significance.

In the instant cause, the testator by the terms of paragraph (c) of the third clause of his will manifestly intended to provide only for such of LeRoy's children as were born to him and his wife Annie L. Fales. The republication therefore was of the provision for the gift over to Harriet.

There is however, respondents next contend, a provision within paragraph (c) of the third clause which manifests a clear intention to provide for all of LeRoy's children generally who were living at his death. The language on which they rely is as follows: "* * * the share of the net income payable to said LeROY ATHERTON FALES, provided for in section (b), shall be paid to his children in equal shares during the continuance of this trust, and, if there are no surviving children of LeROY ATHERTON FALES at his decease, then all of his said share of the income shall be paid to said HARRIET LEE FALES."

The republication thereof, respondents reason, has the effect of embracing them as beneficiaries as well as any children born to Annie who might have survived their father. This conclusion is strengthened, they argue, by the fact that the testator employed the word "leaving" when referring to "children by his present wife, Annie L. Fales," but used the word "surviving" when referring to LeRoy's children generally, in the provision on which they rely. It would not be sensible, they urge, to hold that they were not included merely because the son born to LeRoy and Annie did not survive his father. In support thereof they cite *Male* v. *Williams,* 48 N. J. Eq. 33, for the proposition that the word "leaving" does not always import survival.

This entire contention, however, presupposes that the reference to the word "children" in that portion of paragraph (c) on which they rely is not subject to a natural inference that children, as used there, are not restricted to those born to LeRoy and Annie. It is our judgment that in determining the testator's intent from a reading of the will as a whole, such a restriction must be inferred. An examination of the entire will discloses that in paragraph (f) of the third clause there are two references to such of LeRoy's children as are to share in the distribution of the corpus of the trust when terminated. In each reference they are identified as children "by his present wife, Annie L. Fales." Again, as previously noted, the second codicil in providing for a conditional gift over to Harriet within five years of the testator's death makes no provision for possible children of LeRoy, although he had remarried at the time of its execution.

In *In re Account of Tillinghast,* 25 R. I. 338, the testator made four separate provisions for a named beneficiary. The first three were to "Allan P. Tillinghast, for and during his natural life * * * and, after his death, * * * to the heirs of his body * * *." The fourth provision also gave to Allan

for life and after his death to "the heirs of him the said Allan P. Tillinghast, if any he have." It was contended that by this language the testator manifested an intention to benefit heirs generally as distinguished from the special class named in the first three provisions. This court rejected that contention, concluding from the provisions of the will as a whole that the words "of the body" were accidentally omitted.

Similarly, in the instant cause, the intention of the testator regarding children of LeRoy as evidenced by his will when read as a whole was to benefit only such of them as were born to LeRoy and his wife Annie. The absence of the restrictive and controlling language, "by his present wife, Annie L. Fales," when considered in the light of the distributive intent expressed throughout, indicates an inadvertent omission rather than a deliberate deviation from an otherwise unquestionable testamentary intention. To hold otherwise would be tantamount to remaking the will, which we are clearly without authority to do. *Smith* v. *Powers, supra.*

In answer to the question specifically asked, therefore, we hold that the trustee should pay the one half of the net income previously paid to LeRoy Atherton Fales to Harriet Fales Falk during her lifetime.

In the event of such a holding, respondents make a further claim, namely, that they are entitled to one half of the corpus as pretermitted issue of a deceased child. The statutory provision on which they rely is G. L. 1923, chap. 298, sec. 22, this being the provision in force at the time of the testator's death. *Dwight* v. *Dwight,* 64 R. I. 294.

The language of said section is as follows: "When a testator omits to provide in his will for any of his children or for the issue of a deceased child, they shall take the same share of his estate that they would have been entitled to if he had died intestate, unless it appears that the omission was intentional and not occasioned by accident or mistake."

The respondents' claim is predicated on the words "or for the issue of a deceased child" and the indisputable fact that they are the issue of the testator's son LeRoy, now deceased. However, they do not refer us to any case where the statute has been held applicable to the issue of a child who was not omitted and who was living at the death of the testator. Nor has our independent research, coupled with that of respondents' adversaries, provided us with an authority in point.

Indeed, although the exact language of sec. 22 had long been in force in Massachusetts prior to its adoption by the legislature of this state in 1896 and the judicial interpretations thereof by the Massachusetts court were held applicable to our own statute in *In re O'Connor*, 21 R. I. 465, it does not appear that respondents' contention was ever considered by the Massachusetts court. It clearly never has been in this jurisdiction and the question is therefore one of first impression.

The statute, respondents argue, is remedial and their position is consistent with the legislative policy. They succinctly state their case at page 11 of their supplementary brief as follows: "The statute would provide an intestate share to LeRoy if he were omitted. It would provide a share at the testator's death to LeRoy's children if he were already dead and they were omitted. It must also provide a share to LeRoy's children when he dies after the testator if the terms of the will are still in effect and the estate has not yet been distributed."

We are not so persuaded. A reasonable interpretation of sec. 22 is that the legislature intended to provide an intestate share on the proposition that, as to one entitled to claim it, the testator had died intestate. So considered it follows that one claiming under the statute must be an omitted child or omitted issue of a deceased child who would have inherited by right of intestate succession in the ab-

sence of a will. Here, if the testator had died intestate, LeRoy surviving his father would have taken one half; but his children, these respondents, would not be entitled to share, regardless of when they were born.

We hold therefore that the respondents do not qualify as unintentionally omitted issue of a deceased child within the meaning of the applicable statute. Because of the construction we give to the statute we have not considered the arguments of the parties on the issue of intentional vis-a-vis unintentional omission.

On May 18, 1966 the parties may present to this court for our approval a form of decree in accordance with this opinion to be entered in the superior court.

## APPENDIX I

### CODICIL

I, WARREN R. FALES, of the Town of East Providence, County of Providence, State of Rhode Island, do hereby declare the following to be a codicil to my last Will and Testament, bearing date the first day of July, A. D. 1919, to wit:

FIRST. I hereby nominate and appoint the Industrial Trust Company, a corporation located and doing business in Providence, State of Rhode Island, my executor and trustee in the place and stead of the Slater Trust Company.

SECOND. In all respects, other than herein set forth, I hereby ratify and confirm my said last Will and Testament.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this twenty-eighth day of March, A. D. 1923.

(signed) WARREN R. FALES (seal)

## APPENDIX II

### CODICIL

I, WARREN R. FALES, of the Town of East Providence, County of Providence and State of Rhode Island, do hereby declare the following to be a codicil to my last Will and Testament, bearing date the first day of July A. D. 1919, to wit:

FIRST. WHEREAS, my son LeROY A. FALES is now indebted to me in a large amount, to wit, $14,150.00, more or less, and

WHEREAS, I have voluntarily paid the Slater Branch Industrial Trust Company the sum of Nine Thousand Dollars for certain notes on which said LeRoy A. Fales was the maker and which purported to bear my signature as endorser, but my said signature as endorser having been wrongfully placed on all said notes by said LeRoy A. Fales without my knowledge, consent or authority, and

WHEREAS, in my said Will of July 1st, 1919, I have made certain provisions for my son, LeRoy A. Fales,

NOW THEREFORE, in view of the premises, I hereby declare and provide that said LeRoy A. Fales is not to take anything under said Will of July 1st, 1919 either income, principal or any benefit bequest or devise whatsoever unless he shall have paid to my executor or trustee, within five years from the date of my decease, the full amount of his indebtedness to me existing at the time of my death, as shown by my books, and said indebtedness so shown shall be deemed as an existing indebtedness even if any part thereof is barred by the Statutes of Limitation in force at the time.

SECOND. In case said LeRoy A. Fales does not pay in full all his indebtedness as hereinbefore provided in paragraph first, I give, devise and bequeath the entire amounts devises and bequests which the said LeRoy A. Fales would otherwise be entitled to take under my said Will of July 1st, 1919, to my grand-daughter, HARRIET L. FALES, for her own use and benefit.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this fifteenth day of January, A. D. 1924.

(signed) WARREN R. FALES (seal)

*Hinckley, Allen, Salisbury & Parsons, Stuart H. Tucker,* for complainant.

*Eugene A. Liberati, Hale and Dorr, Frederick G. Fisher, Jr., Martin S. Kaplan* (Boston), for respondents Carrie R. Austin and Arthur V. Fales.

*Edwards & Angell, Bancroft Littlefield,* for respondent John Richmond Fales.

*Edwards & Angell, William H. Edwards, John H. Blish,* for respondent Harriet Fales Falk.