232 A.2d 789.

EDWARD V. EGAVIAN *et al., Executors and Trustees vs.* ALMAS EGAVIAN, *Individually and as Guardian of the Person and Estate of Gregory K. Egavian, a Minor.*

AUGUST 18, 1967.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

KELLEHER, J. This is a civil action[1] for the construction of the last will and testament of George V. Egavian, late of the city of Providence, brought by his two brothers who are designated therein as the executors and trustees. The deceased is survived by his widow, two married daughters and a son who is a minor—all of whom have been made parties to the action. All are represented by counsel and a guardian ad litem was appointed to represent the minor's interests. When this action was ready for the entry of a final judgment in the superior court, it was certified here pursuant to G. L. 1956, §9-24-28, as amended, for our determination.

From the record, it appears that the instant will was executed on August 8, 1962. The testator made certain devises and bequests and then created three testamentary trusts. It is the trust established by the fourth clause of this will which is before us for our consideration. It is set forth in the appendix.

By the terms thereof, the testator bequeathed 1,000 shares of common stock of the American Telephone and Telegraph Company (hereinafter referred to as A. T. & T.) to plaintiffs as trustees for the benefit of his wife. The trust directed the trustees to (a) pay the net income of the trust estate to the wife during her life; (b) make such payments

---

[1]While this suit was commenced prior to January 10, 1966, the effective date of the new rules of civil procedure of the superior court, as a bill in equity, all the proceedings in the superior court ensued after that date. Consequently, we will use herein the terminology of the new rules.

from the trust principal to the wife as in their uncontrolled discretion they considered necessary for her maintenance, support or well-being; (c) transfer and pay over absolutely and in fee simple the entire principal free from any trust to any person or persons designated by the wife in the exercise of a general power of appointment given her in this instrument. This clause also provided that in the event the testator, at the time of his death, did not own 1,000 shares of A. T. & T. stock, the executors were directed to transfer to the trustees other securities or cash of an equivalent value of $100,000 to serve as the res of the fourth clause trust.

At the time the will was executed, the testator owned 1508 shares of A. T. & T. stock. Thereafter on April 15, 1964, A. T. & T. caused its common stock to split on a ratio of two shares for one. The market value of such stock subsequently declined by approximately 50 per cent. This stock split gave the testator a total of 3016 shares. On May 5, 1965, he died owning these shares, never having changed his will of August 8, 1962.

The two issues presented in the instant suit are: *First.* Whether the corpus of the fourth clause trust shall consist of the 1,000 shares of A. T. & T. stock as described in the will or, because of the stock split, shall it be composed of 2,000 shares of stock? *Second.* Since there is an absence in the fourth clause of any mandate or direction to the trustees as to the frequency with which the income from this trust is to be paid, do the trustees have the power to withhold revenue payable to the beneficiary for a period of time in excess of one year?

For reasons that follow, we hold that the corpus of the trust shall be 2,000 shares of A. T. & T. common stock and the trustees have no authority to withhold income which is payable to the beneficiary for a period of time in excess of one year.

# I

## The Stock Split

It is urged on behalf of the widow that we construe the gift in the fourth clause as a specific bequest of 1,000 shares of stock. Accordingly, she would have us adhere to the general rule as it is expressed in *In re Rees' Estate*, 210 Or. 429, 311 P.2d 438, which states that a specific legatee is entitled to any increment in the number of shares of stock specifically bequeathed to him which may occur from a stock split. Contrarywise, it is contended by the children, who are residuary legatees, that the gift is a general or demonstrative and not a specific bequest. The rationale for this position can be found in *McGuinness* v. *Bates*, 345 Mass. 632, 189 N.E.2d 212, a case in which the court ruled that where there was a general bequest of stock, any addition thereto emanating from a stock split, fell into the residuary estate.

The identity of those to whom the surplus shares of a stock split should be awarded and whether the answer thereto turns on the character of the bequest are questions of first impression in this jurisdiction. Accordingly, we shall examine how other courts have treated this problem and with their decisions as a guide, we shall attempt to set forth a rule which appears to us most reasonable to be applied in the circumstances of a stock split.

In our consideration of the problem posed by the split, we are still guided by our long-standing rule that we will read a will in its entirety and if the dispositive intent of the testator is ascertainable from within the four corners of the instrument or is discoverable in the light of the circumstances of its formulation, it shall be given effect. *Industrial Nat'l Bank* v. *Austin*, 100 R. I. 697, 219 A.2d 389; *Jorge* v. *da Silva*, 100 R. I. 654, 218 A.2d 661; *Manufacturers Nat'l Bank* v. *McCoy*, 100 R. I. 154, 212 A.2d 53. Long ago we stated that it was the duty of the judiciary

"regardless of the particular words or phrases found in the will" to interpret such an instrument as to give force to the testator's intention so far as it may be discovered from an analysis and examination of the whole will. *Sherman* v. *Riley*, 43 R. I. 202, 206, 110 A. 629, 631.

Each defendant herein takes the position that his respective right to the additional shares of stock caused by the stock split is dependent upon whether we construe the gift in the fourth clause as either a specific, general or demonstrative bequest. It is clear that a decided majority of courts in considering the effect upon a bequest of corporate stock by a change in the stock or the corporate structure, in many instances, makes an initial characterization of the bequest. We believe the underlying reason for this approach, in which an attempt is made to ascertain the intent of the testator, is due to the fact that many states, including Rhode Island, have incorporated the common-law rule that a will speaks and takes effect as if it were executed a moment before the testator's death, unless a contrary intention appears in the will. G. L. 1956, §33-6-6. *Warner* v. *Baylor*, 204 Va. 867, 134 S.E.2d 263.

As a result, many courts, in order to permit the legatee to receive the additional shares born of the split, have assiduously scoured a will and the circumstances attendant upon its execution in an effort to discern the necessary contrary intent before relief can be had from the restrictions of the common-law rule. In an obvious attempt to free themselves from the shackles of the common law, courts have evolved another rule of construction which, first announced in *Thayer* v. *Paulding*, 200 Mass. 98, 85 N. E. 868, and quoted approvingly in *Gardner* v. *Viall*, 36 R. I. 436 at page 444, 90 A. 760, 763, is stated as follows: " 'A very slight indication of an intention to give shares then in his ownership is sufficient to make the legacy specific * * *.' "

We are of the opinion that in cases of stock splits adher-

ence to tenets of the common-law rule as embodied in our statute relating to the time from which a will speaks is unnecessary. The English statute, it has been said, "* * * relates to the effect and operation of the instrument, not to its construction." 57 Am. Jur., Wills, §1209, pp. 795, 796; *Lee, Etc.* v. *Foley,* 224 Miss. 684, 80 So.2d 765, 61 ALR 2d 209.

While we believe that the distinctions drawn between the classification of bequests are necessary in those cases where ademption and abatement issues are present, such distinctions, in our opinion, are unnecessary and inappropriate in cases involving stock splits. In *Clegg* v. *Lippold,* Ohio Prob., 123 N.E.2d 549, and *In Re Parker's Estate,* Dist. Ct. of App., Fla., 110 So.2d 498, cert. denied 114 So.2d 3, it was pointed out with clarity the fallacy of determining the entitlement of a legatee to the additional shares brought on by a stock split on the basis of the classification of the bequest. The rulings of these two cases are, in our opinion, more attuned to the commercial realities of today's stock market and the modern sophistication of corporate financing and, what is most important, the stockholder's rights which these securities represent. The Florida court in *In Re Parker's Estate, supra,* at 503 and 504, summarizes these observations as follows:

> "* * * A share of corporate stock entitles the shareholder to an undivided share of profits of the corporation which may be declared from time to time in the form of dividends, and also to a share in the assets of the corporation on liquidation. These rights may from time to time be altered by action of the board of directors alone, or in certain cases by other actions which must be approved by a vote of the shareholders. Corporate law provides, through these possibilities, needed flexibility in financing so that the management and shareholders may deal with varying business conditions and turns in corporate fortune. In the world of today, it seems more logical to assume

that, in the absence of language to the contrary, a testator, in making a gift of a given number of shares of stock in a corporation, intends that the legatee be entitled to the future profits of the corporation in the same fractional share as the testator received at the time of the execution of the will * * * ."

It is readily apparent from an understanding of the basic elementary principles of corporate security law that a change in the number of shares of stock attributable to a split in the stock of the corporation occurring, as it does here, between the execution of the will and the death of the testator should be considered one of form and not substance. *In re McFerren's Estate*, 365 Pa. 490, 76 A.2d 759. A stock split in no way alters the substance of the testator's total interest or rights in the corporation. See also *Warner v. Baylor, supra,* at 877, 134 S.E.2d at 270. His proportionate share of ownership, his rights on dissolution and the total value of his investment in the corporation are all preserved intact after the split is consummated. The only noteworthy occurrences resulting from a stock split are the receipt of a new certificate evidencing the change in shares and necessary clerical corrections to be made on the corporation's and stockholders' record books. A stock split is merely a dividing up of the outstanding shares of a corporation into a greater number of units without disturbing the stockholder's original proportional participating interest in the corporation.

We agree with the following paragraph contained in a comprehensive annotation on this topic appearing in 7 A.L.R.2d, §5, p. 281. It reads:

"The rule is definitely established, at least in the United States, that a split-up, or reduction of the par value, of shares of stock which were the subject of a bequest does not result in an ademption of the bequest, unless a contrary intention on the part of the testator appears, the split-up not amounting to an extinguishment of the existence of the subject of the

gift, and, so, the legatee being entitled to the increased number of shares which replaced those bequeathed."

Support for our position with an illustration aptly pertinent to the instant case can be found in 3 Restatement, Property, Future Interests, Parts 3 and 4, §244. There it is said at page 1228:

"When a will describes the subject matter of the gift as particular shares, bonds or securities, and, between the execution and effective date of the will, these shares, bonds or securities are exchanged as an incident to the reorganization or consolidation of the issuing corporation, or other like occurrence, then such gift, normally, is construed to pass what was originally given despite its new form, and the event subsequent to the execution of the will neither destroys nor diminishes the inclusiveness of such gift * * *."

By way of illustrating this proposition, Restatement, *supra,* at page 1229 enumerates the following hypothetical case:

"2. A makes an otherwise effective will devising '1200 shares in B Corporation' to C in trust for the benefit of D for life, thereafter to D's children absolutely. B Corporation exchanges these shares for new shares in the ratio of 1 to 5. A thus receives 6000 shares. A dies. The intended corpus of the trust is the 6000 shares in B Corporation."

We repeat our often-expressed rule that the paramount object of a will construction case is the seeking and fulfillment of the testator's intent. To rely in this case on the theories advanced here by the children for a formalistic and almost arbitrary analysis as to how this gift should be classified is clearly lacking in common sense and reason. It would give undue credence to pure fiction to hold that a testator's true intent as to whether a legatee should receive the increased number of shares due to a stock split could be determined from the degree of specificity with which the be-

quest was drafted when the contingency which has subsequently occurred was one the testator had little reason to anticipate at the time he drew his will and was one over which he had little control.

It is our firm belief that the rule first expressed by the Pennsylvania supreme court in *In re McFerren's Estate, supra,* and subsequently adopted in four other jurisdictions[2], which removed the distinction between specific, general or demonstrative legacies as a necessary incident when considering the effects of a stock split, is far sounder, and more just than the others which require an initial classification. In *Allen v. National Bank,* 19 Ill. App.2d 149, 160, 153 N.E.2d 260, 265, an Illinois court said "* * * that in the absence of an intention to the contrary, a legatee of shares of stock is entitled to additional shares issued as a result of a stock split occurring after execution of the will." Whereas it has in the past been generally held that a legatee receives the surplus shares of stock split only if the testator is deemed to have specifically bequeathed the stock in question, today we embrace the rule as announced in *Allen, supra,* and hold that it is presumed that the prime intent of the testator is that the legatee is to benefit from any increased shares coming by way of a stock split provided no contrary intent is evident in the will.

Our decision here is reinforced by the holding in *Heinneman v. Colorado College,* 150 Colo. 515, 374 P.2d 695. That case also involved a bequest of stock and a stock split which was subsequent to the drawing of the will. In pointing out that the split reduced the value of the stock from what it had been when the testator executed his will, the court at 150 Colo. 520, 374 P.2d 697, said:

---

[2]See *In re Fitch's Will,* 281 App. Div. 65, 118 N.Y.S.2d 234; *In re Parker's Estate* (Fla. App.), 110 So.2d 498, cert. denied Fla. Sup. Ct. 114 So.2d 3; *In re Helfman's Estate,* 193 Cal. App.2d 652, 14 Cal. Rptr. 482; *Allen* v. Nat'l Bank of Austin, 19 Ill. App.2d 149, 153 N.E.2d 260.

"It is the duty of the court to determine the actual intent of the testatrix and having determined that intent, then to see that it is carried out, and that the beneficiaries named receive that which the donor intended they should receive. The court should not so construe the will here involved as to deprive a beneficiary of a value which the testatrix intended to be given, and which construction would result in the residuary legatee receiving an asset which the testatrix obviously did not intend that it should receive."

To sustain the position put forth in this case on behalf of the testator's children would be to allow them benefits as residuary legatees that the testator never intended that they should enjoy over the claim of his widow.

Accordingly, we hold that the corpus of the trust created by the fourth clause of the instant will includes the increment to the shares resulting from the stock split. Hence 2,000 shares of A. T. & T. stock will be used to fund the trust created by this clause.

## II

### Payment of Income

In posing the second issue, the trustees point out that the provision in the fourth clause which permits them to distribute the income to the beneficiary contains no direction as to the frequency with which these payments should be made. They therefore inquire from us as to whether they must pay the income annually or at more frequent intervals, or can withhold income payable to the beneficiary for a period in excess of one year.

Intertwined inextricably with this question is the eligibility of the trust created by clause fourth to qualify under the Internal Revenue Code for the marital deduction. One of the conditions which must be fulfilled before a trust can so qualify is that income from the trust must be payable

750

"annually or at more frequent intervals."[3] The tax savings to the estate, should this trust so qualify, are admittedly substantial.

The widow urges that in giving proper effect to her husband's dominant intent to create a valid marital trust we should rule that trustees shall pay the net income to her more than once a year. She points out that A. T. & T. dividends have been paid quarterly since 1893. We believe that in effect we are being asked to declare that the testator has established a valid marital trust under the pertinent provisions of the Internal Revenue Code. This, we believe, is not within our power and clearly beyond the scope of our authority. We will not so rule.

We will, however, declare what the law of Rhode Island is regarding when income from a trust is to be paid to a beneficiary in the absence of clear instructions by the testator pertaining thereto. We first set forth this rule in *Butler v. Butler,* 40 R. I. 425, 101 A. 115, and it has been reaffirmed several times since then.[4] When no time for payment of income is fixed and there is no direction for its accumulation, income is payable to the beneficiary as it accrues.

In affirming this long-standing rule we also point out that we will not infer any power in a trustee to withhold the

---

[3]In order for a trust created under Sec. 2056 (b) (5) of the I.R.C., involving a life estate with a power of appointment in the surviving spouse, to qualify for the marital deduction benefits five conditions must be met:
"1. The wife must be entitled to all the income;
2. it must be payable at least annually;
3. the wife must have a general power of appointment exercisable in favor of herself or her estate;
4. the power must be exercisable in all events;
5. no other person may have any power to appoint any part to any person other than the wife."
See Bowe, William J., Estate Planning and Taxation, chap. 2.17, p. 76.

[4]*Aldrich* v. *Aldrich,* 43 R. I. 179, 110 A. 626; *New England Trust Co.* v. *Brown,* 44 R. I. 87, 115 A. 641; *Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery,* 62 R. I. 83, 3 A.2d 236.

payment of income once it accrues. *Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery, supra.* This rule shall govern the trustees in their administration of the fourth clause trust. To say any more would serve no purpose, or to hold as the widow would wish to have us rule would be tantamount to remaking the testator's will. This, as we said in *Industrial Nat'l Bank* v. *Austin*, 100 R. I. 697, 219 A.2d 389, we are without the authority to do.

The parties may present a judgment to the court in chambers in accordance with this opinion.

Mr. Justice Joslin did not participate in the decision in this case.

## APPENDIX

"Fourth: In case my wife, Almas Egavian, shall survive me, I give and bequeath one thousand (1,000) shares of the common stock of American Telephone & Telegraph Company to my brother, Edward V. Egavian, and to my brother, Larry V. Egavian, hereinafter called the 'Trustees,' their successors and assigns, To Have And To Hold the same — In Trust — however, for the uses and purposes and with and subject to the powers hereinafter expressed and declared concerning the same, that is to say: Said Edward V. Egavian and Larry V. Egavian or other the trustee or trustees for the time being under these trusts, shall hold the above described property (the same, including the investments and reinvestments thereof, being hereinafter referred to as 'said trust estate') — In Trust — to take the care, charge and management of said trust estate, to receive and collect the rents, interest, dividends, profits and other income accruing therefrom; and after paying all taxes, assessments and other charges upon said trust estate and all expenses attending the execution of these trusts, including a reasonable compensation for services in the trusteeship, shall pay and apply the balance of said rents, interest, dividends and other income, (hereinafter referred to as the 'net income') and convey, assign,

transfer and deliver the principal of said trust estate as follows:

"(a) Said Trustees shall pay the net income of said trust estate to my wife, Almas Egavian, for and during the term of her life.

"(b) Said Trustees shall make such payments from the principal of said trust estate to my said wife, Almas Egavian, as said Trustees shall in their sole and uncontrolled discretion consider necessary, advisable or desirable for the purpose of providing for the maintenance, care, support, well-being or otherwise for the benefit of my said wife, Almas Egavian, during her lifetime.

"(c) Upon the decease of my said wife, Almas Egavian, said Trustees shall transfer, assign and pay over, absolutely and in fee simple and free from any trust, the entire principal of said trust estate to that person or those persons whom my said wife, Almas Egavian, shall by her last will and testament appoint, provided, however, that my said wife by her last will and testament may appoint the principal of said trust estate, absolutely and in fee simple and free from any trust, to her estate; and provided further that there shall be no power in any person other than the said Almas Egavian to appoint any part of the principal of said trust estate to any other person, firm or corporation, as said appointment shall be exercisable by the said Almas Egavian alone and in all events, and provided further, however, that in any event my said wife Almas Egavian for any reason whatsoever shall not by her last will and testament appoint the principal of said trust estate to any person or persons, then upon the decease of my said wife said Trustees shall divide said trust estate into as nearly as may be four (4) equal parts, and shall forthwith transfer, convey, assign and pay over two (2) of said equal parts to my son, Gregory K. Egavian, his heirs and assigns forever and shall transfer, convey, assign and pay over one of said equal parts to my daughter, Florence Wolohojian, her heirs and assigns forever and shall transfer, convey, assign and pay over one of said equal

parts to my daughter, Anita K. Wolohojian, her heirs and assigns forever.

"In the event that at the time of my decease I shall not be the owner of one thousand (1,000) shares of stock of said American Telephone & Telegraph Company, I direct that the trust created under this Fourth Clause of this my last will and testament shall not lapse and to prevent such lapse, I further direct that my executors shall pay over to the Trustees under this Fourth Clause other securities or cash equivalent in value at the date of my decease to said sum of One Hundred Thousand Dollars ($100,000.00), which securities and/or cash shall be invested and reinvested by said Trustees and the income and principal thereof shall be paid, transferred, conveyed and assigned by said Trustees to those persons who would be entitled to same under the provisions of this Fourth Clause of this my last will and testament."

*Armstrong, Gibbons, Black & Lodge, William J. McGair,* for complainant.

*Morriss & Vacca, James R. Morriss, James P. Quirk, John F. Flynn,* for respondent.