PATTON, ROBERT W., Associate Judge.
This is an appeal from what was designated by the trial court as Order On Petition For Construction of Will which is being here considered as in fact a final judgment. The Order was entered as the result of a Petition filed in said court by Andrew H. Dick and The Florida First National Bank of Jacksonville, formerly the Florida National Bank of Jacksonville, as Trustees under the Will of Signe Sofia Liljegren, deceased. The purpose of the Petition was to have the trial court determine the ownership of certain stock of American Telephone and Telegraph Company held by said Trustees.
*554 The decedent Signe Sofia Liljegren, hereinafter referred to as the decedent, died on July 25th, 1958, leaving a last Will and testament dated September 8th, 1954, and a codicil thereto dated December 5th, 1956. A Stipulation was entered into between the parties to this cause in the trial court wherein, among other things, it was agreed that at the date of the execution of the said Codicil and at the date of her death, the decedent was the owner of 550 shares of stock of American Telephone and Telegraph Company. Inasmuch as this stock, and the additions thereto hereinafter mentioned, was the only reason for the Order from which this appeal has been taken, references hereafter in this opinion to stock will mean stock of American Telephone and Telegraph Company.
By her said Will, the decedent made certain specific bequests of personal property, not here involved except as considered by the trial court in its determination of the intent of the testatrix, and then made the following provisions with respect to the residue of the estate:
“THIRD: All the rest, residue and remainder of my estate, or whatsoever kind and wheresoever situated, I give, bequeath and devise unto my husband, GUNNAR OSCAR LILJEGREN, ANDREW H. DICK, and THE FLORIDA NATIONAL BANK OF JACKSONVILLE, a national banking corporation with its principal place of business in Jacksonville, Florida, as Trustees, the individual Trustees to serve without bond, TO HAVE AND TO HOLD THE SAME IN TRUST, to collect the income therefrom, and to manage and to hold the said trust property for the following uses and purposes:
1. During the lifetime of my husband, GUNNAR OSCAR LILJEGREN, all of the net income from the said trust estate shall be paid and distributed to my husband in such installments as may be convenient, but at least quarterly, or if my husband is unable to receive and enjoy the income, the Trustees shall use the same, or such much thereof as in their judgment is necessary and proper, for the maintenance, health and pleasure of my said husband during his entire lifetime, and upon his death the principal of said trust, together with any undistributed income, shall be distributed as follows:
(a) Fifty (50) shares of stock of American Telephone and Telegraph Company to LAURIE JOAN DICK.
(b) Fifty (50) shares of stock of American Telephone and Telegraph Company to DIANE MERRY DICK.
(c) Fifty (50) shares of stock of American Telephone and Telegraph Company to CHRISTINE HEU-SACIC.
(d) All the rest, residue and remainder to SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, organized by the Imperial Council of North America of Ancient Arabic Order of the Nobles of the Mystic Shrine, to be the absolute property of said hospitals and used for such purposes as their governing authorities may wish.
If upon the closing of the trust there is not one hundred fifty (150) shares of stock of American Telephone and Telegraph Company in the trust, the Trustees shall distribute cash or other securities of a value equal to the then market value of American Telephone and Telegraph Company stock to each of the three distributees.
2. The Trustees appointed herein, in addition to the powers given by the State of Florida, shall have the following powers :
The Trustees shall receive, hold, mortgage, convert, sell, convey, assign, alter, reinvest and otherwise deal with the above described properties, and any additions thereto, as they, in their discretion, *555 shall deem to be for the best interest of the beneficiaries hereunder, to the same extent that I, myself, might do.
By way of illustration, but not of limitation of the Trustees’ powers, I, subject to the provisions of this instrument, hereby authorize the Trustees: to retain the original securities and properties received by them from me, now or hereafter, for such time as to them shall seem best, and to dispose of them by sale, conveyance or exchange, or otherwise, as and when they shall deem advisable; to use any necessary funds to make repairs and to modernize or improve any real estate which may be a part of the trust at any time; to raise money to pay taxes, assessments, judgments, liens or benefits at any time imposed upon any of the real estate in the trust and to execute oil, gas and other mineral and mining leases upon such terms as the Trustees may deem proper; to rent and lease real estate whether or not the lease shall commence in the future or shall extend beyond the probable termination of the trust; to acquire by purchase or exchange, or otherwise, securities and properties from arty source and hold them as a part of the trust estate so long as to the Trustees shall seem advisable; to participate in the liquidation, reorganization, consolidation or other financial readjustment of any corporation or business in which the trust estate is or shall be financially interested; to determine what reasonable expenses and other charges shall be charged against the principal of the trust and what against the income; to invest the trust funds in such securities and properties as they shall deem advisable without limiting such investments to those investments which are legal for trustees and other fiduciaries under the laws of the state in which the trust is being administered; to borrow money for the benefit of the trust estate and, if required to do so, secure the same by collateral or mortgage; to compromise, arbitrate, or otherwise adjust claims in favor of or against the trust estate; to execute such assignments, stock powers, contracts, bills of sale, deeds, mortgages, notes and other instruments in writing reasonably required or advisable for the businesslike administration of this trust estate; to receive all dividends, rents, profits, and income of. every nature due the trust estate; hereby giving to my said Trustees full and complete power and authority to control, manage, convey and deal with the said trust estate, whether the property thus handled shall be in the trust at the time of my death or placed in it thereafter.”
The material parts of the Codicil of the decedent are as follows:
“FIRST: In subsections (a) and (b) of paragraph 1. in Item Third of my said Last Will and Testament, I leave to LAURIE JOAN DICK and DIANE MERRY DICK fifty (50) shares each of the stock of American Telephone and Telegraph Company. I hereby increase these bequests so that one hundred (100) shares of said stock shall go to LAURIE JOAN DICK and one hundred (100) shares of said stock shall go to DIANE MERRY DICK, and in the last paragraph on page 2 of my said Will, I hereby increase the figure “one hundred fifty (150) shares” to two hundred fifty (250) shares.
“SECOND: In all other respects, I hereby ratify and confirm my said Last Will and Testament executed by me on September 8, 1954.”
On or about May 29th, 1959, while the estate of the decedent was still in the course of administration or probate proceedings, there occurred a three for one stock split of the stock of American Telephone and Telegraph Company, thus resulting in 1650 shares of the stock being in the hands of the Executors. The Trustees under the Will qualified through order of court on April 13th, 1959, but it appears that distribution of the 1650 shares of *556 stock to the Trustees was not accomplished until the month of February, 1960.
On or about June 22nd, 1964, while the said Trust was still in active existence, there was another stock split of American Telephone and Telegraph Company stock, this time being a two for one split. As a result, the Trustees then had on hand 3300 shares of said stock, and this was the same number of shares of said stock that was in the hands of the Trustees on December 20th, 1972, the date upon which Gunnar O. Liljegren, the income beneficiary of the Trust, died.
On September 14th, 1973 the trial court entered a full and complete order in which it reached the determination that 1500 shares of said stock be distributed to the residuary beneficiaries of the Trust, Laurie Joan Dick, Diane Merry Dick and •Christine Heusack, and the other 1800 shares of said stock would be distributed to Shriners Hospitals For Crippled Children. Although the Order is silent on the point, it is assumed that the trial court intended that of said 1500 shares Laurie Joan Dick and Diane Merry Dick would each be entitled to 600 shares and Christine Heusack would receive 300 shares.
The trial court considered the arguments of counsel as to whether the legacies of the stock involved were specific or general and based its decision upon what it determined to be the intent of the testatrix, having taken into consideration the provisions of both the Will and the Codicil, and also having considered evidence as to the relationship between the testatrix and the said residuary beneficiaries. The court, in said order, specifically referred to the following decisions:
In re Parker’s Estate, [Fla.App.] 110 So.2d 498
In re Garrison’s Estate, [Fla.App.] 156 So.2d 18
Allen v. National Bank of Austin, [19 Ill.App.2d 149] 153 N.E.2d 260
Egavian v. Egavian, [102 R.I. 740] 232 A.2d 789
We agree with the conclusion reached by the trial court, but for somewhat different reasons. The cases above cited, as well as all the authorities cited by both counsel in their briefs filed in this appeal, deal either with stock splits and stock dividends which took place during the lifetime of the testator, and for which there was no provision made in the will or as in the Garrison Estate case, a question of ademption. Under such circumstances it becomes necessary to construe the will to determine the intent of the testator with respect to such additions to his estate. It is clearly pointed out in the beginning of the lengthy annotation in 46 A.L.R.3d 43 cited by Appellee, that the cases therein cited do not deal with accretion or additions to estates during administration of the estate or of the life of a testamentary trust. The following quotation from the decision of the Supreme Court of Illinois in the said case of Allen v. National Bank of Austin sets forth the reasons for determining whether a legacy is specific or general:
“The difference between a general and a specific legacy is set forth in Lenzen v. Miller, 1941, 378 Ill. 170, 174-175, 37 N.E.2d 833, 836, which defines these legacies as follows:
“A general legacy is a gift of personal property by will, not amounting to a bequest of a particular thing or of particular money or of a particular fund which is designated and distinguished in the will from all others of the same kind. A specific legacy is a bequest of a specific article or of a particular fund which the will distinguishes from all the rest of the testator’s estate of the same kind.”
The purpose of so classifying bequests is two-fold, to determine the order of distribution in the event the estate is inadequate to satisfy all the gifts and to determine whether or not a bequest is adeemed in the event the asset is dis *557 posed of between the time of execution of the will and the time of death. Thus, if the bequest is of a specific chattel and the chattel is not in the estate at the testator’s death, the specific legatee will receive nothing while a general legatee will receive the equivalent of his bequest in money or kind. Since it is presumed that testators intend that their beneficiaries receive something, courts favor a construction of general legacy because only a specific legacy can be adeemed. In the instant case the estate is more than adequate to cover all bequests, and the rationale behind the classification of legacies is not pertinent for our purposes. Therefore, many of the cases in which these symbols have been used to characterize bequests are not germane to the instant case. In most cases where a stock split or stock dividend was involved, nothing more than lip service has been paid to the classification. Instead, courts have sought to find the intention of the testator, and almost always have found that the additions of stock in stock splits go to the legatee, as a consideration of the cases will reveal.”
What we have here is a will and codicil thereto in which the testatrix disposed of her entire estate. She owned SSO shares of said stock at the time of her death and, as so stipulated by the parties, she owned this same amount of stock at the time she executed the codicil. She disposed of all this stock by her will and codicil. The stock splits took place after her death, one during the period of the administration of the estate and the other during the life of the trust, and the Trustees now have the entire 3300 shares of stock on hand. Neither the will nor the codicil thereto contained any provision relating to such an addition to the estate or to the trust. It then becomes necessary to determine the law governing such situations.
Of course the intent of the testatrix would be governing had she expressed same, but the general law appears to be that, in the absence of a contrary intention expressed in the will, additions to capital received by an executor during the course of administration become a part of the capital and belong to the ultimate beneficiary if not used for the payment of debts or expenses of administration. This stock, of course, was a part of the residue of this estate which was distributed by the executors to the trustees. If there has been no intervening trust, and the will had provided that 100 shares each of the stock would be distributed to Laurie Joan Dick and Diane Merry Dick and 50 shares to Christine Heusack, there would seem to be no doubt that, in the absence of any provision in the will or codicil to the contrary, any additions to this stock received during the course of administration would have belonged to said persons in the same proportion in which the initial stock was devised, subject, of course, to any diminution by reason of payments of debts or cost of administration of the estate. There has been no question raised in this case that any of the additional shares received by the executors constituted income, as distinguished from capital. We are of the opinion that these additional shares so received by the executors were capital, and when distributed by them to the trustees, were held by the latter for the benefit of the principal beneficiaries of the trust, subject, of course, to disposal by the trustees under the powers granted them in the will. The only case which the Court has been able to find wherein there was á stock split while the estate was in the course of administration and wherein there was a testamentary trust is the case of Rutherford National Bank v. Black, 133 N.J.Eq. 306, 32 A.2d 86. Although the court there became involved with the question of specific v. general legacies, the following language from the opinion appears relevant:
“As to the number of shares of stock to which the grandsons are entitled, their rights are not affected by the various changes in form of the number of shares made by the Bank. The 25 shares of stock at the time of the death of the *558 testator were changed to 100 shares by a four to one split-up, but this was a nominal change and in nowise affected the percentage of interest in the Bank represented by the original certificates. Nor was the proportionate interest affected by the 50% stock dividend, so-called, which is not in essence a dividend at all. The 25 shares become 100 shares and the 100 shares become 150 shares, all without affecting, in the slightest, the interest of the stockholder. The 150 shares represented the same aliquot interest in the assets of the Bank. ...”
In that case the grandsons were beneficiaries of a testamentary trust. The income from the additional shares in the estate here, and also from those later received by the trustees, appears to have been disbursed by the trustees to the income beneficiary of the trust, Gunnar Oscar Liljegren during his lifetime. No question has been raised as to the disbursement of said income.
With respect to the stock received by the trustees during the administration of the trust, the result seems to be governed by statute. Chapter 690 of the Florida Statutes is the Uniform Principle and Income Law, Section 690.06(1) thereof contains the following provision:
“(1) All dividends on shares of a corporation which form a part of the principal and are payable in shares of the corporation, * * *, shall be deemed principal. * * * ”
and Section 690.06(3) contains the following:
“(3) * * *. All disbursements of corporate assets to the stockholders, whenever made, which are designated by the corporation as a return of capital or division of corporate property shall be deemed principal.”
Nothing contained in this act specifically refers to “stock splits.” This may be so because the very term “stock split” indicates that nothing takes place upon such a split except an increase in the number of shares of stock and a corresponding decrease in the value per share of the new stock. A true “stock split” results in no gains for the stockholder, nor any loss, but simply a change in the form of evidence of his corporate ownership. Page on Wills, 1972-1973 Supplement, Section 39.8, contains the following relevant statement:
“Where a true stock split is involved the difficulties of apportionment between life tenant and remaindermen do not arise, and it is immaterial whether the bequest of stock was characterized as specific or general, as the legatee is entitled to the increased number of shares resulting from the split because the split does not respresent a change in the proportionate ownership of the stock, but only a change in form.”
In support of this statement the case of In re Helfman’s Estate, 193 Cal.App.2d 652, 14 Cal.Rptr. 482, is cited. Language quite similar to this is contained in the decisions of the Supreme Court of Florida in the case of In re Vail’s Estate, 67 So.2d 665, and of the District Court of Appeals, 2nd District in the case of Pentland v. Pentland, 113 So.2d 872.
Aside from Chapter 690, there seems to be little doubt as to the general law on the subject. The following quotations express this:
“There is little dispute between the parties here or the authorities that, in the absence of express provisions to the contrary, the profits or increments of corpus belong to the corpus of the trust and are not income.” United States Trust Co. of New York v. Jones, 414 Ill. 265, 111 N.E.2d 144. “The income beneficiary of the trust contends that it was the testator’s intention that all capital gains and all increases in value that would cause the valuation of the trust principal to exceed $100,000 (the initial capital of the trust) be paid out to the income beneficiary. Such a departure from the established precepts of trust administra *559 tion would require a clear expression in the will that such was the testator’s purpose.” In re Ross’ Estate, Sur., 151 N.Y.S.2d 1022.
No one in this case has suggested that the Appellees would not have been entitled to a total of 250 shares of the stock at the termination of the trust had there been no stock splits. If there had been no such stock splits it would seem reasonable to assume that 1 share of the stock prior to the splits would have been worth a good deal more than one share of the stock after the splits. As a matter of fact, one share of the stock before the splits should b'e worth exactly six times as much as one share of the stock after the splits, nevertheless, the Appellant contends that the Appellees should only receive a total of 250 shares of stock from the distribution of the trust. This Court is of the opinion that there was nothing in the will or codicil of the decedent to suggest that she intended any such result. There is no evidence in the record to indicate that there had ever been a split of this stock prior to the death of the decedent, or that she ever gave any thought to the possibility that one might occur in the future. We do not believe the clause in the will hereinbefore quoted covering the contingency that there might not be 150 shares of such stock in the trust at the termination thereof should be construed to mean that .the testatrix intended to limit distribution to the Appellees of the total number of shares devised by the codicil. Rather, this language would indicate an intent on the part of the testatrix that if there was not enough stock on hand at the termination of the trust to make distribution to the Appellees that they should get the equivalent in money of that interest in American Telephone & Telegraph Company represented by 250 shares of the stock as of the date of the death of the testatrix.
Interestingly enough, in view of the cases considered by the trial court and relied upon by the parties to this appeal, there is one decision in which language in a will similar to that mentioned in the foregoing paragraph of this opinion was construed as making a devise of stock specific, rather than general, in a situation where there had been a stock split prior to the death of the person making the will, but subsequent to the execution thereof. This is in the case In re Griffing’s Will, 11 A.D.2d 709, 204 N.Y.S.2d 850.
For the reasons herein set forth, we are of the opinion that the Order of the trial court appealed from should be affirmed, but that it should also be amended to provide that the Trustees shall distribute the said 1500 shares of stock as follows: 600 shares to Laurie Joan Dick, 600 shares to Diane Merry Dick and 300 shares to Christine Heusack.
McNULTY, Acting C. J., and GRIMES, J., concur.